97 385
189 335

97 385
c227 4626

# Winton's Appeal

# Morss's Appeal.

# Winton *versus* Morss, Executor of Mott.

1. A supplemental bill in aid of a final decree in equity, whose object is to compel the carrying out of the decree, and give full and complete effect to it, will be entertained.

2. Where a court of equity has once obtained jurisdiction of a subject, it has power to enforce its own decree in reference thereto, without being obliged to have recourse to the assistance of a court of law.

3. Where a complainant in equity, who has filed a bill praying that certain conveyances of real estate may be declared to amount to a mortgage, obtains a decree in his favor, by the terms of which he is declared to be entitled to a conveyance of said real estate on the payment of certain sums of money by him to defendant, and afterwards said complainant fails to pay said sums, although said conveyances are executed and tendered by defendant, it is competent for the court, on the filing by defendant of a petition in the nature of a supplementary bill to enforce the decree, to order the amount of rent in the hands of the lessee of said real estate to be paid by him to defendant, to apply on the original decree.

4. Although a court of equity has no right to decree a sale of mortgaged premises at the instance of a mortgagee, in a distinct and independent proceeding, it is nevertheless justified, under the circumstances mentioned above, in ordering a sale of the real estate in question, if, within a specified time, the amount due by complainant to defendant be not paid, the purchase-money to be applied on account of the amount so due.

March 11th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeals from the decree of the Court of Common Pleas of *Luzerne county.* In Equity. Of July Term 1879, Nos. 43 and 82.

This was a petition, filed April 13th 1877, by D. K. Morss, surviving executor of James Mott, deceased, defendant in the equity cause of Winton *v.* Morss et al., in which cause a final decree was entered January 26th 1875, and affirmed in the Supreme Court, upon appeals taken by each party January 29th 1876. This petition was in the nature of a supplemental bill to enforce the said final decree. It was entitled as a proceeding in the said cause. It recited the prior proceedings in the case, which were as follows:

The original bill, filed December 26th 1870, by W. W. Winton, against D. K. Morss, surviving executor, and the widow and heirs of James Mott, deceased, set forth, that on April 9th 1855, Mott, Newton and Vosburg became owners in equal undivided third parts of a tract of coal land in Luzerne county; that by lease dated August 28th 1858, they leased *all the coal* in said lands at certain rates per ton mined to Barker and others, who, with the assent of the lessors, assigned their interest to the Delaware & Hudson

1 OUTERBRIDGE—25

[Winton's Appeal.]

Canal Company, who have since operated under the lease and paid royalty to the lessors. That by virtue of sundry conveyances and agreements, between the lessors, or some of them, and other parties, the plaintiff, Winton, became the owner in equity of one-third (the Newton third) of said tract, subject to said lease; and of another third (the Vosburg third) subject to the lease, and subject also to the payment of a balance of purchase-money not definitely ascertained; that the legal title to said two-thirds was in James Mott at the time of his death; the complainant Winton offered to pay to the defendant Morss, executor of Mott, all the moneys due by him, and to carry out and perform all the matters and things lawfully required by him to be done, and requested the defendant thereupon to convey to him the said two-thirds of said tract, but the defendant refused, &c. The complainant offering to pay the sums, &c., and to do equity in the premises, prayed equitable relief: 1. That certain assignments, deeds and agreements therein referred to might be decreed to constitute a mortgage to secure the payment of money to the estate of Mott. 2. That the amount of money due by the plaintiff to Mott's estate be ascertained. 3. That on payment by the plaintiff of such sum, the defendant, as executor, be required to convey to the plaintiff the Newton third and the Vosburg third of said tract.

An answer was filed, and the cause was referred to a master, who reported that the papers referred to constituted a mortgage; that the mortgage money of the Newton third had been paid in full; that the balance of the purchase-money due by the complainant on the Vosburg third was $5820.79, and the balance due by the complainant on a loan, which was a lien on said Vosburg third, was $5120.73, which sums were payable by the plaintiff to entitle him to a conveyance of this third.

Exceptions filed to the report were dismissed by the court, the report confirmed, and on January 26th 1875, the court entered a decree (1) that on payment by plaintiff of the costs of suit, the defendant Morss, executor, convey to the plaintiff the Newton third; (2) that upon payment by the plaintiff to the defendants of the sum of $10,941.52, with interest from December 1st 1873, within sixty days, the defendant, Morss, executor, &c, convey to the plaintiff the Vosburg third, subject to the rights of the Delaware & Hudson Canal Company under the above mentioned lease.

From this decree both parties appealed to the Supreme Court, which court dismissed the appeal of each party, and affirmed the decree of the court below, subject, however, in Winton's appeal, to the settlement of a bill of costs filed, which the Supreme Court remitted to the court below for taxation. This remittitur was filed June 29th 1876.

On September 8th 1876, the court below, on motion, ordered that the defendants file the deeds from Morss, executor, to Winton

for the Newton and Vosburg thirds, as directed by the decree of January 26th 1875, subject to the order of the court; and it was further ordered that the plaintiff make full compliance on his part with the said decree, on or before the first Monday of October 1876, twenty days' notice to be given to the plaintiff of this order.

The plaintiff paid into court the costs of suit, and moved the court to permit him to take the deed for the Newton third out of court. The court dismissed this motion, on the ground that plaintiff could not comply with the decree in part and obtain a partial benefit under it, but must obey it in full.

No further proceedings were had in the cause, until the filing of the present petition by the defendant on April 13th 1877. This petition after setting forth in substance the foregoing facts, averred that the petitioner (the defendant) had been at all times ready and willing to comply with the decree of January 26th 1875; had tendered to the plaintiff and filed the deeds to him for the Newton and Vosburg thirds; but that the plaintiff refused to pay the sum of $10,941,52 with interest, for the Vosburg third, as directed by the said decree.

The petitioner further averred that the value of the said Vosburg third has depreciated by reason of the taking out of coal by the Delaware & Hudson Canal Company under the lease; that it is entirely insufficient for the payment of the amount so due upon it; and that the coal rents or royalties have been retained by the Delaware & Hudson Canal Company, under notice from all parties that they should not be paid over until the rights of the parties should be legally determined.

The petitioner prayed: (1) For a rule upon plaintiff, Winton, and also upon the Delaware & Hudson Canal Company, to appear and show cause why the question of rents should not be referred to a master, to ascertain and determine the amount thereof due and owing from said company, for coal taken under the lease from the Vosburg third and also from the Newton third. (2) For an order upon said Delaware & Hudson Canal Company, for the payment of said rents to the petitioner to apply on the balance found to be due to the estate of James Mott, deceased. (3.) For an order for the sale of the said Vosburg third for the payment of any balance that may be found to be due after deducting the rents, the surplus, if any, to be paid over to the plaintiff.

The court having granted a rule to show cause in accordance with the prayers of the petition, the plaintiff, Winton, filed an answer, in which he denied the right of the petitioner to make the Delaware & Hudson Canal Company a party to the suit, or to compel them to interplead therein; he excepted to the petition and rule as irregular and insufficient to give the court jurisdiction over the subject-matter thereof, for the reason that the decree

[Winton's Appeal.]

entered on January 26th 1875, and affirmed by the Supreme Court in June 1876, before the filing of the said petition, was final and conclusive. He further denied the right of the defendant Morss, executor, to receive the rents accrued under the lease from the Newton and Vosburg thirds, which rents, he averred, were his absolute and exclusive property; and he denied the jurisdiction, in this proceeding, to take cognisance of the question of the right to said rentals, or to refer the question to a master, or to make any order or decree concerning the same. He further denied the jurisdiction of the court to order a sale of the Vosburg third, as prayed in the petition.

The Delaware & Hudson Canal Company filed an answer setting forth that they were, many years ago, notified by Mott and by Barker (through whom Winton claims) not to pay coal rentals to either of said parties; that the rents in their hands up to February 1st 1875 were attached by attachment-execution, issued out of the Court of Common Pleas of Luzerne county, and served on that date; under a judgment in said court, in favor of one Flower against the said Barker for $3570, which amount is greater than any balance of rents in their hands. The company further submitted that it is not a party to the said cause of Winton v. Morss et al., and that the question to whom the said rents are payable by them cannot be legally determined under the said petition and rule.

The court, on January 30th 1878, entered the following order: " Aaron Flower, plaintiff in the attachment-execution against Abel Barker, appearing and waiving further notice, the ascertainment of the rents due from both the Vosburg and Newton thirds, is referred to George R. Bedford, master, who will report to the court the amounts respectively due on the Vosburg third, and those due on the Newton third at the time of the notice by Mott to the Delaware & Hudson Canal Company to retain the same, and those which have since accrued on each of said interests.

" The rule for an order on the Delaware & Hudson Canal Company to pay said rents to defendant, and for an order of sale of the Vosburg third is continued.

" The decree of 26th January 1875, ordering the plaintiff to pay to said defendant the sum of $10,941.52, together with lawful interest thereon from December 1st 1873, within the time in said decree specified, being the amount ascertained to be due on the Vosburg third, is hereby amended by adding to it this clause, to wit: ' And upon the plaintiff's failure to make said payment (of $10,941.52, with interest), for a period of thirty days after the filing of this order and notice of the same t⌐ him, that he, the said plaintiff, be for ever barred from all claim to, and equity of, redemption in the said Vosburg third.' "

From this order the plaintiff, Winton, appealed to the Supreme Court, which court reversed the said decree on the ground that

the amendment of the decree was error, and remitted the record for further proceedings in accordance with the opinion of the Supreme Court. The proceedings upon this last-mentioned appeal are reported in Winton's Appeal, 6 Norris 77, *q. v.*

On March 10th 1879, the report of the master, to whom had been referred the matter of the ascertainment of rents due by the Delaware & Hudson Canal Company to the defendants, was filed. The master reported that the Delaware & Hudson Canal Company are indifferent stakeholders of accrued rents as of June 28th 1878, to the extent of $2085.26, due on the Vosburg third, and a like amount of $2085.26 due on the Newton third. Exceptions thereto were dismissed, and the report confirmed by the court, HARDING, P. J., saying, in an ·opinion filed: " Two questions seem yet to remain in this long-litigated case, * * * first, has this court, sitting in equity, jurisdiction to decree the sale of mortgaged premises, at the instance of the mortgagee ? secondly, has this court, sitting in equity, jurisdiction to make the order, in respect to the rents, sought under the exceptional, anomalous and extraordinary circumstances and facts developed in the case, as well before as after final decree ?

" In the beginning this case was clearly within the jurisdiction of equity. The established principle is that when once a court of equity takes cognisance of a litigation, it will comprehend within its grasp every subject embraced in the circle of contest, whether the question be one of remedy or of distinct yet connected topics of dispute ; it will decide all incidental matters necessary to enable it to make a full and final determination of the whole controversy. In other words, when its jurisdiction rightfully fastens to even one of the subjects of contest, it may embrace all that are inseparably involved, for equity abhors multiplicity of suits.

" But this must be understood as referring to matters thus incidently involved, which are themselves within the jurisdiction of chancery ; otherwise questions triable solely in a court of law before a jury, such as ejectment founded on legal title, an action of scire facias on a mortgage where the relation of debtor and creditor alone existed, an action of debt on bond or a replevin and the like, might become intermingled in a proceeding in equity, and all the contested facts connected with them be decided by the judge without the intervention of a jury at all. This would be all wrong. Under our Constitution even the legislature could not confer such chancery power upon the courts. The authority to do so, apparently contained in the concluding words of art. V., sect. 20, must be subordinated to the Declaration of Rights, art. I., sect. 5, which provides that ' trial by jury shall be as heretofore, and the right thereof remain inviolate.'

" Besides, it must not be overlooked that, in Pennsylvania, chancery jurisdiction over mortgages, involving only the relation

of debtor and creditor between the parties, has never been conferred upon the courts by the legislature, either directly or by implication. Whatever may have been, or still may be, the powers of the English chancery in this respect, we have none of them in this state. * * * Mortgages are neither mentioned nor referred to in any of the statutory provisions upon the subject. The jurisdiction invoked now nowhere exists.

["No matter, then, how great may be the equities of the defendants in the bill, I must refuse the motion for 'an order of sale of the Vosburg third.'" The case of Ashhurst et al. v. The Montour Iron Company, 11 Casey 30, is directly in point; it was there distinctly, and in so many words, decided that the courts of Pennsylvania have no jurisdiction in equity to decree a sale of mortgaged premises at the instance of the mortgagee.] (Assignment of error in Morss's appeal.)

"In the second place, what is to be done with the motion for an order on the Delaware & Hudson Canal Company to pay to the defendants in the bill as well the rents due from the Vosburg and Newton thirds, respectively, at the time of the alleged notice by Mott to the company to retain, as those which have accrued from the same subsequently? * * * As I understand the motion, it contemplates a purpose altogether proper and remedial in the premises; and, in my judgment, if acted upon within the limits of our clearly possessed chancery power, it must and can have no other effect than to aid in enforcing or carrying out a long standing decree of this court, which hitherto has been set at naught, and which may possibly fail of enforcement altogether if this power be not exercised. * * *

"The Delaware and Hudson Canal Company are the lessees of the coal, acknowledged as such on all sides; a large amount of rents have accrued prior to and during the pendency of this litigation, and are now in the hands of that company; these rents represent the very body of the estate in dispute; they stand in its stead; the lessees are mere indifferent stakeholders with notice to retain; clearly, then, the chancery power of this court may direct the application of the rents where undoubted equity points. Why, if there had been no lease in the case, and the plaintiff, refusing to pay the purchase-money and the mortgage money decreed, had insisted upon taking out the coal and selling it, would not a court of equity enjoin him at once? Or, if he had taken out the coal and sold it, would not replevin lie against the purchaser with notice?

"To conclude: The order for a reference to a master cannot be awarded to the extent sought. The Delaware and Hudson Canal Company cannot now be interjected into this suit as a party, nor be called upon in any way connected with it, to answer matters involving possible litigation between the company and the grantors

[Winton's Appeal.]

under whom the plaintiff claims, or between the company and the plaintiff himself. Such litigation, if perchance there be any, might develop questions triable only in a court of law before a jury. Nor can the ·plaintiff be called upon to answer further in this business. The controversy between him and the defendants, in respect to all matters upon which the final decree was based, has been put at rest. To the extent, however, that the Delaware & Hudson Canal Company are indifferent stakeholders of the rents after due notice to retain, I think this court may inquire. The plaintiff should have due notice of the proceeding always, and also Aaron Flower, attaching creditor of Abel Barker. After ascertainment of the amount, I am of the opinion that we possess ample chancery power to direct the application of the rents where unmistakable equity suggests. If the amount should equal the sum of the original decree, its application, as indicated, would accomplish already adjudged equity between the parties; if less, and the plaintiff should still persist in his refusal to obey the original decree, subsequently accruing rents may be alike ascertained, and their application alike directed. Thus will be completed in equity what was begun in equity, without resort whatsoever to another tribunal."

The following decree was entered:—

"Now, May 12th 1879, it is ordered, adjudged and decreed, that the sum of forty-one hundred and fifty-three hundredths dollars, one-half thereof being from the Vosburg third, and the other half being from the Newton third, as ascertained to be now in the hands of the Delaware & Hudson Canal Company, indifferent stakeholders, and not involved in any possible litigation between the company and the grantors under whom the plaintiff claims, nor between the company and the plaintiff himself, be paid by said company to the defendant to apply on the original decree in this case."

Both parties thereupon took an appeal, Winton assigning for error: (1.) The assuming of jurisdiction by the court under the defendant's petition; the appointment of a master to ascertain the rents due on the Vosburg and Newton thirds by the Delaware & Hudson Canal Company, and the making said company a party by the order of January 30th 1878. (2.) The overruling of his exceptions and the confirming of the master's report. (3.) The final decree of May 12th 1879, as above.

The appellant, Morss, assigned for error the refusal of the court to grant the prayer contained in his petition for the sale of the Vosburg third, as expressed in the portion of the above opinion within brackets.

*James Ryon* (with him *A. H. Winton*), for the appellant in Winton's Appeal, and for the appellee in Morss's Appeal. The

petition of the defendant Morss, filed two years after the contro-versy between the parties, had been finally settled by the Supreme Court in Winton's Appeal, 6 Norris 77, was an anomalous and illegal proceeding, which gave the court below no jurisdiction to re-open the case. It was neither a cross-bill, an interlocutory peti-tion, nor a bill of review: Dennison *v.* Goehring, 6 Barr 402; Riddle's Estate, 7 Harris 431; Russell's Appeal, 10 Casey 258; Hartman's Appeal, 12 Id. 70; Green's Appeal, 9 P. F. Smith 235. The issue raised on the petition was entirely different from the objects of the original bill. The decree was that Winton may, upon payment of a certain amount, at his option, compel a recon-veyance. The petition does not seek, as a supplemental bill in aid of a decree, to enforce the decree; for the decree was in Winton's favor, and the defendant is seeking to enforce it as a judgment against him.

A mortgagee out of possession has a mere lien on the land, he is not entitled to the rents, issues or profits, and the lessee cannot be made a party, especially after final decree, and be compelled to pay over such rents to the mortgagee: Bittinger *v.* Baker, 5 Casey 66; Bank *v.* Patterson, 9 Barr 311; Anderson *v.* Neff, 11 S. & R. 208; Kenton *v.* Vandergrift, 6 Wright 344; Ashhurst *v.* Montour Iron Co., 11 Casey 30. In this case, the mortgagee, having never had actual possession, has no right to the two-thirds of rents belonging to the plaintiff.

The statutory proceeding on a mortgage in Pennsylvania is by scire facias, and the courts have no jurisdiction in equity to decree a sale of mortgaged premises at the instance of the mortgagee. The defendant cannot come in after the final decree and have it altered by attaching to it an order of sale and foreclosing the equity of redemption: Turnpike Co. *v.* Martin, 2 Jones 361; Winton's Appeal, 6 Norris 77; Ashhurst *v.* Montour Iron Co., 11 Casey 30; Denison *v.* Goehring, 6 Barr 402; Brightly's Equity, sect. 827, p. 578.

*Henry W. Palmer* and *Benjamin S. Bentley*, for the appellant in Morss's Appeal, and for the appellee in Winton's Appeal.— This petition was in the nature of a bill to enforce the final decree by compelling the plaintiff to do the equity which in his bill he offered to do, but which, after obtaining a decree for the relief prayed for, he has refused to do. This is not the case of a mort-gagee out of possession demanding rents and profits. The body of the estate, whether pledged, leased or sold, was the *coal*. The lessees by removing the coal, which they had a right to do, took the estate itself, the lessors' and mortgagee's portion of which is repre-sented by the royalties or proceeds thereof remaining in the lessees' hands. The Delaware & Hudson Canal Company lessee is not made a party to the litigation, but, as indifferent stakeholder, is

willing to pay the stake to the party entitled thereto. The defendant has complied with his duty under the decree, and merely asks that the decree be enforced as against the plaintiff.

Under the circumstances of this case we were entitled to a decree for the sale of the Vosburg third. We might have brought an equitable ejectment, and obtained a conditional verdict, and if not complied with the court would order a sale. But we were brought directly into a court of chancery by our opponents, and the court of equity, having taken jurisdiction, and awarded to the plaintiff the equity he claimed, will work out *our* equities by enforcing the plaintiff to do the equity he promised. A court of equity will decree a sale of mortgaged premises for the benefit of the mortgagee if necessary to work out the equities of both parties. The money proceeds of coal, in the hands of the lessees, represents part of the purchase-money which the plaintiff was decreed to pay us for the Vosburg third: these proceeds should be paid to us in the partial enforcement of the decree; and the Vosburg third, or what remains of it, should be sold to pay us the rest. It is argued our remedy is by scire facias or ejectment, but the coal as to a part is gone, and the proceeds are in the control of the court. We have no personal security, and if we were to proceed by scire facias we would have the privilege of selling a hole in the ground.

Mr. Justice PAXSON delivered the opinions of the court May 2d 1881.

### WINTON'S APPEAL.

This proceeding was in the nature of a supplemental bill in aid of a decree in equity. It is not so technically, for the reason that it was commenced by petition. The form adopted was not objected to, nor is it material.

That a bill may be filed for such a purpose is well settled. It is true it cannot vary the principle of the decree. Its province is to carry out the decree, and to give full and complete effect to it as it exists: Hodson v. Ball, 1 Phil. Ch. 177; Adams's Equity, 416, where several authorities are cited.

It would be tedious to recite all the prior proceedings in this case. The original decree which it is now sought to enforce was entered January 26th 1875, on a bill filed by this appellant, praying that a certain deed and certain assignments specified in said bill, may respectively be decreed to be a mortgage; that the amount due by said plaintiff (appellant) may be ascertained, and that when so ascertained, upon the payment thereof by the plaintiff (which payment in full the plaintiff offered to make), the defendant may be decreed to make and execute "a deed of conveyance for the undivided one-third part of the said tract of land aforesaid." A protracted litigation resulted in the decree of January 26th 1875, before referred to, which sustained the position

assumed by the plaintiff, that the papers referred to, though absolute on their face, yet in reality constituted a mortgage. The decree further ordered, that upon the payment by the plaintiff of the costs of suit, the defendant should convey a one-third interest in the Calvin Barber tract; and that upon the payment by the plaintiff to the defendants of the sum of $10,941.52, they should convey another third of said tract. In obedience to this decree the defendants executed the necessary conveyances for the Newton third and the Vosburg third of said tract of land, tendered them to the said plaintiff, who refused to accept them and to pay the money. The deeds were then filed.

This proceeding was then commenced in the court below. Upon the filing of a petition setting forth the facts, the court granted a rule upon the plaintiff and also upon the Delaware & Hudson Canal Company, lessees of the land in controversy, to show cause why the amount of rent in the hands of said company, due the plaintiff, should not be ascertained and applied to the payment of the amount found to be due defendants by the decree of January 26th 1875; and also to show cause why the Vosburg third of said tract should not be sold for a like purpose. This proceeding resulted in the following decree: "Now, May 12th 1879, this cause came on to be further heard, and was argued by counsel, and and thereupon upon consideration, it is ordered, adjudged and decreed that the sum of $4100.53, one-half thereof being from the Vosburg third, and the other half being from the Newton third, ascertained to be now in the hands of the Delaware & Hudson Canal Company as indifferent stakeholders, and not involved in any possible litigation between the company and the grantors, under whom the plaintiff claims, nor between the company and the plaintiff himself, be paid by said company to the defendant to apply on the original decree in this case."

It was to this decree the appeal was taken.

The court below declined to order the sale of the Vosburg third, as prayed for, from which refusal the defendant appealed. His appeal will be subsequently considered.

The position of the plaintiff is this: Having obtained a decree in his favor by which the deed was declared a mortgage, upon the offer to pay promptly and in cash the amount due thereon, he now declines to pay the money, and denies the power of the court to compel him to do so. He seems to be under the impression that the cause has reached a point where the court has lost its power; that the proceedings are at a dead lock, and that the only remedy left the defendant is to go into a court of law with his scire facias upon the mortgage, a writ of ejectment or action of covenant. In the meantime the land, which is chiefly valuable for its coal, is being constantly depreciated by the working of its mines.

The plaintiff has mistaken the powers of a court of equity. It

[Winton's Appeal.]

is not so helpless as he imagines. When once it has a case within its grasp it has all the authority necessary to a full disposition of all the questions arising therein. In doing so it has no occasion to call to its aid the assistance of a court of law. Its remedies are plastic, and may be moulded to meet the exigencies of the case. The plaintiff having invoked this jurisdiction and obtained the relief he sought, cannot now turn the defendant over to a court of law to obtain the redress to which he is entitled upon the plaintiff's own showing. The tribunal to which the latter has appealed will hold him and his property within its grasp until he does that equity which he solemnly promised to perform.

This is no new doctrine. It was said by this court, in McGowin v. Remington, 2 Jones 63, "that when a court of equity takes cognisance of a litigation it will dispose of every subject embraced within the circle of contest, whether the question be of remedy or of distinct yet connected topics of dispute. If the jurisdiction once attaches from the nature of one of the subjects of contest, it may embrace all of them, for equity abhors multiplicity of suits." In Souder's Appeal, 7 P. F. Smith 498, it was held that "when a court of equity once obtains jurisdiction of a subject it will comprehend and decide all incidental matters necessary to enable it to make a full and final determination of the whole controversy." Authorities might be multiplied indefinitely were it necessary.

It is the merest technicality to say that the decree of January 26th 1875 contains no direct order upon the plaintiff to pay the money. Why should it? It was a decree against the defendant upon the plaintiff's bill. It was obtained upon the faith of plaintiff's offer to pay the money. It would have been gratuitous to make a decree against him to do what he had offered to do as a ground of his relief. His present attitude is that of one who has trifled with, if not deceived, the court.

The supplemental petition is strictly in aid of the decree. It does not seek to change it or to modify the principles upon which it was pronounced. It merely asks that it may be enforced, and that the amount ascertained to be due, a portion of which is purchase-money, may be paid. The Delaware & Hudson Canal Company, an indifferent stakeholder, has in its possession a sum of money due on the coal lease of this very land. The court below committed no error in awarding it to the appellee.

　　　　The decree is affirmed, and the appeal dismissed, at the costs of the appellant.

MORSS'S APPEAL.

Much that was said in Winton's Appeal, just decided, is applicable to this case. The present appeal was to the refusal of the court below to order a sale of the Vosburg third of the Calvin Barber tract of land. The action of the learned judge was based

upon the ruling of this court in Ashhurst et al. *v.* The Montour Iron Company, 11 Casey 30, where it was held that the courts in Pennsylvania have no jurisdiction in equity to decree a sale of mortgaged premises at the instance of the mortgagee.

This principle is correctly stated and is amply sustained by the authority cited. It has no application to this case, however. This proceeding was not in its origin an application for the sale of mortgaged premises on the part of the mortgagee; on the contrary, it was a bill filed by the mortgagor to have an absolute deed declared a mortgage, accompanied with an offer to pay the mortgage-debt in cash as soon as the amount thereof could be ascertained. The plaintiff (mortgagor) succeeded in his application, and a decree was made in his favor on his bill. He now refuses to pay the debt, and the present application on the part of the mortgagee is to have the mortgaged premises sold to enforce the original decree. The appellant has a clear right to the order of sale. The power of the court to grant it rests not upon the right of a court of equity to decree a sale of mortgaged premises at the instance of the mortgagee, in a distinct and independent proceeding, for it has no such right, but upon that other familiar rule of equity which was referred to in Winton's Appeal, that where the jurisdiction of a court of equity has once attached, it embraces within its grasp all powers and remedies necessary to give effect to the equity which is invoked. "It will dispose of every subject embraced within the circle of contest, whether the question be of remedy or of distinct, yet connected, topics of dispute :" McGowin *v.* Remington, 2 Jones 63. The sale of this property has become necessary to enforce the decree of the court. It does not need the aid of a court of law for such purposes. Its own power is ample, and its process sufficiently plastic to sell either a tract of land or a horse, where either becomes essential to a full and final determination of the controversy. As was well said by the learned judge below : "Equity rightfully took charge of this case in the beginning ; equity has rightful charge of it now ; equity will not drop it until every matter, whether it be of remedy or of a distinct but connected topic of dispute involved in the controversy, and of itself within equitable jurisdiction, has been decided."

The appellee was the one to bring his case within equitable jurisdiction. The jurisdiction thus invoked is broad enough to grasp the whole subject-matter of controversy, and the right to sell this tract of land is one of its incidents.

If the appellee does not pay the money specified in the decree of January 26th 1875 within sixty days from this date, to wit : May 2d 1881, it will be the duty of the court below to order a sale of the tract of land in question in accordance with the prayer of appellant's petition.

The order refusing such sale is reversed at the costs of the appellee.