# PACIFIC LIVE STOCK CO. *v.* MALONE, STATE ENGINEER

### No. 2920

January 2, 1931. 294 P. 538.

*J. E. Woolley* and *Vincent J. McGovern,* for Petitioner:

*M. A. Diskin,* Attorney-General and *Wm. J. Forman,* Deputy Attorney-General, for Respondent:

## OPINION

By the Court, MORAN, District Judge:

It is the contention of the petitioner that the state engineer should, upon request, take charge of the division and distribution of the waters of the Quinn River stream system pursuant to the decree of the Humboldt County district court.

The contention of the respondent is that, as the decree in question does not constitute a statutory adjudication pursuant to the 1913 water law, as amended, no such

duty on the part of the respondent arises by reason of such decree.

The petitioner urges in his brief that there are two distinct methods whereby water rights may be determined under the statute:

One, as contemplated by sections 18 to 35, inclusive (as amended), and, two, as prescribed in section 45.

It is immaterial for the purposes of this opinion whether the statute contemplates two distinct methods or not; but, in passing, we express the belief that, instead of a duality of methods, there is only a dual system in which suits for the adjudication of water rights may originate. That is to say, either through the office of the state engineer (by his own motion or by petition) or by complaint in the district court, with the state engineer acting as an officer of the court in either case.

It does not follow, however, that all suits involving water rights must originate in either way; since it is easy to conceive of many kinds of water controversies that have no dependency on the statute.

■ It goes without saying that the water act must be read and construed in its entirety—this is borne out by the language used by this court in the case of Ormsby County v. Kearney, 37 Nev. 338, 142 P. 803, 806, wherein Justice NORCROSS, who was passing upon a question of constitutionality, said: "In considering the constitutionality of sections 18 to 51, inclusive, they should be viewed with reference to the purpose designed to be accomplished by sections 52 to 56. The latter sections are clearly administrative. Before they can be put into force, the relative rights of water users upon a stream must be ascertained."

It is very evident that the court in the phrase "the relative rights of water users upon a stream must be ascertained" could not mean anything else than to make the ascertainment or adjudication of water rights under the statute an indispensable prerequisite for their subsequent administration. In other words, there must first be a final adjudication of water and water rights on a

particular stream or stream system before the administrative sections begin to apply.

 The procedure for such a final adjudication is plainly outlined in the act. This being so, we must examine the petition and decree in question, in order to ascertain whether the adjudication is a statutory one as contemplated by the law. If it is, the duties of the state engineer in connection with its administration are clearly stated by the legislature and should be performed by him. If the decree, on the contrary, is not a statutory adjudication, but an adjudication of water rights in an equity action, then it would follow that the state engineer is not concerned with the enforcement of such a decree or such rights, since his duties are special and cannot be extended by the court.

It cannot reasonably be contended that the state engineer, by virtue of his office, is required to take notice of all judgments or decrees involving water rights. If this were so, we would be compelled to accept the untenable position that the state engineer must interpret and carry out all decrees of state courts wherein water or water rights were in some fashion determined between litigants.

It has not been contended that in the Quinn River case the proceedings for adjudication originated in the office of the state engineer, either on his own initiative or by application to him according to law. In fact, the petition states that the action was originally instituted in the district court of Humboldt County. Therefore, in order to determine the question as to whether the decree before us constitutes a statutory adjudication, we must inquire whether the procedure was in compliance with what the petitioner calls the second method whereby adjudication of water rights may be had.

After careful examination of the decree which we are requested to enforce by writ of mandate, we find that it is nothing more than an equity judgment between several water users on the Quinn River and certain tributaries thereof. It contains nothing from which we could even infer that an adjudication of water rights such as

is prescribed by the statute was contemplated by the court. It does not appear that a preliminary determination was ever made by the state engineer according to the provisions of sections 18 to 35 (as amended), both inclusive; neither does it appear that the state engineer ever made, or was called upon to make, a hydrographic survey of the stream system, as provided by section 20, and as directed by section 45. The petition and decree further fail to state that the suit was ever transferred or referred by the court, under section 45 of the act, to the state engineer for determination, or that, indeed, any other administrative matter was ever referred to the state engineer by the court at any time during the course of the action.

So that, aside from the mere request by the petitioner, after the action was closed, that the state engineer enforce the decree, there is nothing to show that that officer had any knowledge of the litigation or any information that such a decree ever existed.

If the procedure outlined in the water law of 1913, and amendments, were not followed in the Quinn River case, at least to some degree, it is difficult to conceive how the judgment or decree in question could be considered an adjudication of water right as contemplated by statute.

In section 36½ (as added by Stats. 1927, c. 192) the legislature expressly constitutes the state engineer an officer of the district court in water cases; but his duties are of a special nature, and plainly restricted to cases of determination or adjudication of water rights as in the act prescribed. We cannot extend his duties as an officer of the court beyond the limitations of the statute itself. Hence, it follows that, if section 36½ is to have a special application only in cases of adjudication under the statute, it also follows that all of the prescribed duties of the state engineer under section 45 and section 54 (as amended) are also special duties, which apply only to cases of adjudication as in the act provided.

Thus, if the water law be read as a whole, the interpretation is irresistible that the duties of the state engineer in water cases are interlinked with and dependent

upon the procedure outlined in the act itself; and it would be a strained construction of the statute, as we view it, to attempt to extend these special duties into a general obligation on his part to administer and enforce every adjudication of water rights, regardless of compliance with the statute.

We, therefore, are of the opinion that the petition does not state facts sufficient to warrant the issuance of an alternative writ of mandate, or sufficient to constitute a cause of action.

The views herein set out are, in a measure, sustained by the case of Wattles v. Baker County, 59 Or. 255, 117 P. 417.

We do not deem it necessary to discuss the other questions raised by the demurrer, and we have not overlooked the fact that section 54 of the water act was amended by the Statutes of 1929, p. 298, c. 176.

For the reasons stated, the demurrer is sustained on the ground that the petition does not state facts sufficient to constitute a cause of action against the respondent, or facts sufficient to entitle the petitioner to any relief. The alternative writ is quashed, and the proceedings are dismissed.

It is so ordered.

NOTE—DUCKER, C. J., being disqualified from participating in this decision, the Governor designated Hon. THOS. F. MORAN, District Judge, to sit in his place.