JEAN MULLANEY McCORMICK, DONNIE BUSEY STEPHENS, LEO A. BOURKE, FRANCES L. BOURKE, ASH FORK LIVESTOCK COMPANY, A CORPORATION, AS SUCCESSOR IN INTEREST TO CLAYTON E. GUNN, AND HENRY McCLEARY TIMBER COMPANY, A CORPORATION, PETITIONERS, v. THE SIXTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF HUMBOLDT, AND MERWYN H. BROWN, JUDGE OF SAID COURT, RESPONDENTS.

No. 3692

June 27, 1952.                    246 P.2d 805.

*John C. Bartlett,* of Reno, for Petitioners Jean Mullaney McCormick and Donnie Busey Stephens.

*James A. Callahan,* of Winnemucca, and *John S. Halley,* of Reno, for Petitioners Leo A. Bourke and Frances L. Bourke.

*Sidney W. Robinson,* of Reno, for Petitioner Ash Fork Livestock Company.

*Kearney & Adams,* of Reno, for Petitioner Henry McCleary Timber Company.

*Sanford A. Bunce,* of Lovelock, and *J. D. Skeen,* of Salt Lake City, Utah, for Respondents.

*W. T. Mathews,* Attorney General of Nevada, Amicus Curiae.

## OPINION

By the Court, BADT, C. J.:

This proceeding attacks the constitutionality of an act of the state legislature making the services of the state engineer available to the district courts of the state for the purpose of administering the distribution of the waters of a stream or stream system under a prior final decree in an equity suit adjudicating the rights of the respective water users. The situation is separate and distinct from the administration of the waters of a stream or stream system under the provisions of sections 18 to 51 of the water law of 1913, 192, as amended. That part of the water law has been before this court on numerous occasions, both as originally passed and as amended by succeeding legislatures. It has been analyzed and passed upon section by section.[1]

[1]Ormsby County v. Kearney, 37 Nev. 314 (1914), 142. P. 803; Bergman v. Kearney (D.C.Nev.), 241 F. 884 (1917); Vineyard Land & Stock Co. v. District Court, 42 Nev. 1 (1918), 171 P. 166; In re Waters of Barber Creek, 43 Nev. 403 (1920), 182 P. 925; Pitt v. Scrugham, 44 Nev. 418 (1921), 195 P. 1101; Scossa v. Church, 43 Nev. 403, 182 P. 925; Id., 43 Nev. 407, 187 P. 1004; Id., 1923, 46 Nev. 254, 205 P. 518, 210 P. 563; Humboldt Land & Cattle Co. v. Dist. Court, 47 Nev. 396 (1924), 224 P. 612; In re Water Rights in Humboldt River, 49 Nev. 357 (1926), 246 P. 692; Pacific Live Stock Co. v. Ellison R. Co. 52 Nev. 279 (1930), 286 P. 120; Mexican Dam & Ditch Co. v. District Court, 52 Nev. 426 (1930), 289 P. 393; Pacific Live Stock Co. v. Malone, 53 Nev. 118 (1931), 294 P. 538; Ruddell v.

The waters of the Quinn River and its tributaries were not adjudicated under the 1913 water law as amended. On the contrary, the adjudication of that stream was made in an equity suit by a judgment entered in 1919. Pacific Live Stock Co. v. Ellison Ranching Co., 52 Nev. 279, 286 P. 120. For a brief history of the litigation, see McCormick v. District Court, 67 Nev. 318, 218 P.2d 939.

The act of the legislature in question in this proceeding is contained in Stats. 1951, p. 158, chap. 121, and is entitled:

"An Act to amend an act entitled 'An act to provide a water law for the state of Nevada; providing a system of state control; creating the office of the state engineer and other offices connected with the appropriation, distribution, and use of water, prescribing the duties and powers of the state engineer and other officers and fixing their compensation; prescribing the duties of water users and providing penalties for failure to perform such duties; providing for the appointment of water commissioners, defining their duties and fixing their compensation; providing for a fee system, for the certification of records, and an official seal for the state engineer's office; providing that the district court may appoint the state engineer and his assistants officers of the court to administer final water decrees in certain cases; providing for an appropriation to carry out the provisions of this act; and other matters properly connected therewith, and to repeal all acts and parts of acts and certain acts in conflict with this act,' approved March 22, 1913, as amended."

District Court, 54 Nev. 363 (1933), 17 P.2d 693; In re McGregor, 56 Nev. 407, 412 (1936), 48 P.2d 418, 55 P.2d 10; In re Silver Creek, 57 Nev. 232 (1936), 61 P.2d 987; Jahn v. District Court, 58 Nev. 204 (1937), 73 P.2d 499; Carpenter v. District Court, 59 Nev. 42 (1937), 73 P.2d 1310, 84 P.2d 489; In re Waters of Manse Spring, 60 Nev. 280 (1940), 108 P.2d 311; Kent v. Smith, 62 Nev. 30 (1943), 140 P.2d 357; In re Bassett Creek, 62 Nev. 456 (1944), 147 P.2d 1022, 155 P.2d 324; Application of Filippini, 66 Nev. 17 (1949), 202 P.2d 535; McCormick v. District Court, 67 Nev. 318 (1950), 218 P.2d 939.

Under section 1 of this act, section $46\frac{1}{2}$ of the water law first provides as follows:

"(a) On any stream in this state on which the water rights have been adjudicated and determined and the final decree therefor entered, as between all persons who claimed the right to the use of the waters of such stream, in a suit brought in the district court having jurisdiction of said stream and in which said suit the said adjudication and determination was not had in the manner provided in sections 18 to 51, inclusive of this act, and thereafter one or more of the parties as users of such adjudicated and determined rights and/or their successors in interest desire that the state engineer take charge of the diversions and distribution of such rights and administer them in conformity with the said final decree of the court, they may petition said district court which entered such decree requesting such administration."

It then provides for notice of the filing of such petition, the issuance of an order to show cause, the fixing of a date for the hearing, matters of service, etc. It provides for the filing of objections whereupon the petition, deemed in the nature of a complaint, and the objections constitute the pleadings. The state engineer is required to be notified and to attend the hearing. The practice in civil cases is made to apply insofar as consistent with the summary character of the proceedings. Prior to final determination the court may direct the state engineer to make a hydrographic survey and render a written report, with such maps and other data as will enable the court to determine whether or not administration of such water rights by the state engineer would be for the best interests of the water users. If the court so determine, it shall direct the state engineer to distribute such waters in strict accordance with the said decree and thereafter the distribution of the water is under the supervision and control of the district court. In such distribution and administration the state

engineer, his deputies, assistants and water commissioners are deemed officers of the court only and subject only to its supervision and control. Appeals may be taken to this court. Subdivisions (b) and (c) of section 46½ as amended have to do with the assessment and collection of the costs of such administration.

The 1951 amendment is first asserted to be unconstitutional and void because it purports to amend an act of 1949, which in turn purported to amend an act of 1947. The amendment of 1947, Stats. 1947, c. 159, p. 518, amended the 1913 water law by adding the said section 46½ in its original form. Petitioners undertake to establish that such section 46½ in its original form was unconstitutional in that it did not provide for notice to the other parties to the equity decree and that the title of the act did not satisfy constitutional requirements. Premised upon the conclusion that the 1947 act was thus void and of no effect, as not constituting due process and as bearing a defective title, petitioners then contend that as the 1947 act was a nullity, there was nothing to amend, and that accordingly the 1949 amendment, Stats. 1949, 104, was likewise a nullity, and that for the same reason the 1951 amendment was also void.

The only act in question here is the act of 1951. In the 1951 enactment of section 46½ it must be said that the legislature (to quote the language used by this court in Worthington v. District Court, 37 Nev. 212, 142 P. 230, 234, L.R.A. 1916A, 696), "expressed its purpose intelligently and provided fully upon the subject." Recognizing that there was a conflict of authority upon the subject, this court adopted what it considered the weight of authority and the better opinion, namely, that an amendatory statute is not invalid, although it purports to amend a statute which had previously been amended or for any reason had been held invalid. To meet the attack on the 1949 amendment that the same

violated the due process clause by reason of its failure to provide for notice (we are only advised by counsel that such attack was made in the district court in an abortive proceeding under the 1949 act), a natural and unobjectionable method of curing this defect was by an amendment rewriting the section so as to include a requirement for notice, thus obviating the defect, if any. State v. Silver Bow Refining Co., 78 Mont. 1, 252 P. 301. We conclude that the attack on the 1947 amendment of the water law creating section 46½ cannot be used in attacking the 1951 statute if the last named is otherwise valid. Worthington v. District Court, supra.

It is next insisted that the 1951 amendment violates the constitutional requirements of section 17, article IV, reading as follows:

"Sec. 17. Each law enacted by the legislature shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be revised or amended by reference to its title only; but in such case, the act as revised, or section as amended, shall be reenacted and published at length."

We have above quoted in full the title of the 1951 act which in turn quotes the title of the 1913 water law for the purpose, among other things, of "providing a system of state control" and further "prescribing the duties and powers of the state engineer" and further "providing that the district court may appoint the state engineer and his assistants officers of the court to administer final water decrees in certain cases." The last provision was enacted as an amendment to the title of the 1947 act by the 1949 legislature. The 1951 legislature adopted the title as amended in 1949. With our rejection of the first attack on the 1951 statute, based upon the alleged invalidity of the 1947 and 1949 amendments, the second ground of attack must likewise fail. Worthington v.

District Court, supra; State v. Payne, 53 Nev. 193, 295 P. 770; Tonopah & Goldfield R. R. Co. v. Nevada-California Transportation Co., 58 Nev. 234, 75 P.2d 727.

It is next insisted that the 1951 act is invalid because the legislature could add section $46\frac{1}{2}$ in no other way than by rewriting the entire act; that as section $46\frac{1}{2}$ is an amendment of the entire water law and not of any specific section, it was necessary, for a valid adoption of section $46\frac{1}{2}$, "to re-engross the entire 1913 water law." Four Nevada cases are cited to support this contention. They do not so hold, although some early Louisiana and Indiana cases adopted this view. Consistent legislative practice in almost all of the states, including Nevada, has been to amend the original act, or the original act as amended, by rewriting one or more of its sections, and this practice has had the overwhelming approval of the courts. State v. Lawson, 40 Wash. 455, 82 P. 750; 1 Sutherland, Statutory Construction (3d Ed. Horack) 406, sec. 1928, n. 6.

Petitioner's main contention however is that the Quinn River decree became final upon its entry by the district court in 1919, that it contained no clauses reserving jurisdiction, that the court has long since lost jurisdiction to modify the same and that the effect of the present proceedings, under authority of section $46\frac{1}{2}$ as adopted in 1951, would amount to a substantial modification of the decree.

Under section 6 of article VI of the state constitution, "The district courts in the several judicial districts of this state shall have original jurisdiction in all cases in equity; * * * The district courts and the judges thereof shall have power to issue * * * all other writs proper and necessary to the complete exercise of their jurisdiction; * * *." The original action of Pacific Live Stock Co. v. Ellison Ranching Co., et al., 52 Nev. 279, 286 P. 120, was a suit in equity to restrain the defendants from diverting water from the Quinn

River in violation of the asserted rights of the plaintiff. All of the water users on the stream system were eventually made parties and each asserted his own rights and sought injunctive relief against encroachment by the other parties to the action. Throughout it was regarded as a proceeding in equity. The final decree is generally referred to as an "equity decree" as distinguished from a decree made under the provisions of the general adjudication provisions of the water law. This decree fixed the rights and priorities of all of the users on the stream system, with appropriate injunctive provisions against violation of such rights. It contained no provisions for an appointment of a watermaster or a commissioner or any other officer to administer these rights. We are not informed whether any of the parties to the litigation requested the inclusion of any such provisions. Perhaps neither the court nor any of the parties considered it necessary. It is possible that it was considered that after the rights of the parties had been fixed, they could themselves conform with the decree in the exercise of their rights without supervision or administration by an officer of the court. In the present proceeding no one has suggested that the appointment of a watermaster could not have been properly incorporated in the decree. Such course was in fact definitely approved in Montezuma Canal Co. v. Smithville Canal Co., 218 U.S. 371, 31 S.Ct. 67, 54 L.Ed. 1074, and in Silkey v. Tiegs, 51 Idaho 344, 5 P.2d 1049, and the cases therein cited. Petitioners insist however that to do so at the present time is to modify the decree after the court has lost jurisdiction to make any modification.

It is said in 30 C.J.S. 1014, Equity, sec. 616, subtitle "Enforcement and Performance of Decrees:" "The jurisdiction of a court of equity to enforce its decrees is coextensive with its jurisdiction to determine the rights of the parties, and it has power to enforce its decrees as a necessary incident to its jurisdiction. Except where the decree is self-executing, jurisdiction

of the cause continues for this purpose, * * *. A decree may be final as to the main equities of the parties to the suit but it is not final as to proceedings for enforcement, and although it is so far final as to be appealable, yet the court may make other orders or decrees to carry it into effect. * * * The costs of enforcement may be distributed according to the equities of the case."

In Butler County v. Pittsburgh H., B. & N. C. Railway Co., 298 Pa. 347, 148 A. 504, the trial court had in an original equity suit entered a judgment compelling Butler county to permit the railway company to cross a certain bridge with its cars and equipment on condition that the company would protect and preserve the structure and make all ordinary repairs. A number of years later the county petitioned the court for mandamus to compel the railway company to comply with the conditions and requirements of the original decree. As against objections to the jurisdiction, the Supreme Court of Pennsylvania held that the power of a court of equity to enforce its own decrees is a necessary incident to the jurisdiction of the court; that without such power a decree would in many cases be useless; that the powers of equity to enforce a decree rest largely in the discretion of the court; that although the customary processes were by mandatory injunction, attachment for contempt, writ of sequestration or writ of execution, the court might designate an individual to perform its order. Relying on Com. ex rel. Lieberum v. Lewis, 253 Pa. 175, 98 A. 31, and Winton's Appeal, 97 Pa. 385, the court definitely held that the jurisdiction of the court in equity continues for the purpose of enforcing the decree.

In Huber v. First National Bank, 251 Ill.App. 36, the jurisdiction of an equity court to enter subsequent orders to enforce its original decree, although the original decree contained no reservation of jurisdiction, was considered at length. The contention was made there, as in the instant case, that the subsequent enforcement

order or supplemental decree changed and modified the original decree of foreclosure. Referring to the original decree, the court said: "All of the rights of property in either party were fixed. The supplemental decree in no manner changed or modified the judicial rights of the parties. It did add to the former decree further specific terms as to the enforcement of the decree, and that was perfectly proper. * * * While usually a court of equity has no power, after final decree, to amend, modify or alter the principles of the decree, the generally adopted rule is that it retains and possesses the power to control the time and manner of the execution of its judgment and decrees. * * * [This] is elementary."

In Winton's Appeal, 97 Pa. 385, a decree in equity had been entered defining the rights of the parties. Upon a subsequent petition to the equity court for an order to show cause why certain further orders should not be made for the enforcement of the decree, it was, as here, urged that the court had lost jurisdiction. The Supreme Court of Pennsylvania characterized the supplemental petition as one strictly in aid of the decree and not seeking to change it or to modify the principles upon which it was pronounced. As against the contention of the appellant that the respondent was restricted to other remedies, the court said: "The plaintiff has mistaken the powers of a court of equity. It is not so helpless as he imagines. * * * Its remedies are plastic, and may be moulded to meet the exigencies of the case."

The employment of the services of a watermaster in administering the distribution of the waters of a stream system under fixed rights and priorities is no stranger to the water users of a number of the stream systems in this state nor to Nevada lawyers and judges. A simple decree involving two appropriators who have diverted all of the waters of a small stream could undoubtedly be enforced by contempt proceedings. A great variety of

situations would arise between such simple decree and one involving several hundred appropriators. Enforcement in such case might manifestly require other means. We think it abundantly clear that the district court sitting as a court of equity had full and complete authority, if it felt that the circumstances or the exigencies of the case warranted, to see that its decree was enforced through the employment of a watermaster and, if available for the purpose, through the services of the state engineer's office. By section 46½ of the water law, as amended in 1951, the legislature made available to the court in the case of such equity decrees a new officer, namely, the state engineer. Prior to such act, there was no statutory authority under which the court could have directed the state engineer to administer the decree. Pacific Live Stock Co. v. Malone, 53 Nev. 118, 294 P. 538. The 1951 statute making that officer available to the court, left it entirely within the discretion of the court whether it should avail itself of his services, and only if one or more of the parties requested such procedure and the court thought it to be for the best interests of the water users after notice and hearing on such petition.

It is said however that this is a modification of the decree itself; that in such administration the state engineer could shut off the water of any water user believed to be diverting more than specified in the decree; that he may order installation of headgates and measuring devices or may designate the particular land upon which the water is to be used, though no description is contained in the decree;[2] that he may direct that water be used out of one particular ditch where numerous ditches have been used since the decree, and that an aggrieved party would be without remedy other than to institute proceedings in the district court under the provisions of sec. 75 of the water law. The complete answer to this

---

[2] The decree itself is not under attack for this or any other reason.

contention is that precisely the same criticism would have attached to the appointment of a watermaster in the decree itself, with authority to such watermaster to administer the distribution of the water in accordance with the rights, priorities, acreages, extent of diversions in cubic feet per second, etc. In neither case does a modification of the final judgment result. In both cases the administrator is subject to the supervision and control of the court. To limit the court to contempt proceedings or further equitable relief to enforce its decree adjudicating the rights of 42 water users with 72 appropriations from the Quinn River system involving its two main branches and over a dozen tributaries throughout varying amounts of water flow in each season and varying from season to season, would unduly restrict its power and authority to enforce its decree. Petitioners insist that as this additional enforcement remedy did not exist at the time their rights and priorities were established under the decree, those rights are infringed because the court does not remain restricted to enforcement through contempt proceedings. This however is simply to insist upon a vested right to have, or to resist, some particular form of remedy, and is without merit. Vineyard Land & Stock Co. v. District Court, 42 Nev. 1, 171 P. 166; Humboldt Land & Cattle Co. v. District Court, 47 Nev. 396, 224 P. 612; Crane v. Hahlo, 258 U.S. 142, 42 S.Ct. 214, 66 L.Ed. 514.

This court has often reiterated that the state has an interest in the orderly and economical distribution and use of its public waters. Its legislature has now provided an additional remedy whereunder the individual water user (the owner of the usufruct) and the district courts sitting as courts of equity, may under certain circumstances avail themselves of the services of the state engineer, a trained administrator, in administering equity decrees such as the one here involved. It is we think another step toward its goal of bringing about a peaceful and orderly distribution of the waters of the

state to the persons whose rights of diversion and use have been duly adjudicated by the courts. "In view of the conditions presented, it can readily be understood why the enactment of a special statutory proceeding was imperative, not only to the highest development of our state, but also to the proper supervision of the water of our stream systems." In re Water Rights in Humboldt River, 49 Nev. 357, 246 P. 692, 694. See, also: Application of Filippini, 66 Nev. 17, 202 P.2d 535.

Petitioners express the fear that administration by the state engineer will only entail more frequent and costlier court appearances, and advance the thought that the history of administrative tribunals indicates an increase in litigation growing out of their administration. We think that we may rely on the district courts for prompt and effective correction of any harsh, arbitrary and unwarranted acts of the state engineer in the administration of equity decrees adjudicating water rights. See Jahn v. District Court, 58 Nev. 204, 73 P.2d 499. Even contempt proceedings initiated by him would have to be supported by a showing that he was distributing the water in accordance with the decree. State ex rel. Hinckley v. District Court, 53 Nev. 343, 1 P.2d 105.

Petitioners also contend that section $46\frac{1}{2}$, as created by the 1951 amendment, seeks "to take away from petitioners rights vested in them under the original Quinn River decree entered in 1919 to the extent that the legislature has sought to impose upon parties to said original judgment costs, expenses, obligations and duties not provided for by said judgment. * * * and [is] an attempt upon the part of the legislature to exercise judicial power in connection with the modification of said final judgment." This contention is without merit. As the assessment of costs of distribution and administration would have been entirely proper in the original decree (Montezuma Canal Co. v. Smithville Canal Co., 218 U.S. 371, 31 S.Ct. 67, 54 L.Ed. 1074) and as the

equity court was not foreclosed from making further orders for the enforcement of its decree, the proportionate bearing of the costs by the parties benefiting by the administration is manifestly proper.

Petitioners contend that the right of the district court to enforce the Quinn River decree by contempt proceedings, as upheld by this court in McCormick v. District Court, 67 Nev. 318, 218 P.2d 939, would be abrogated, modified or curtailed by suffering the administration to be had by the state engineer. Administration under section 46½ however is only an additional and cumulative means of enforcement, to be adopted by the court only if it finds such methods to be to the best interests of the water users. The objection made is without any convincing force.

It is insisted however that the administration of the decree by the state engineer vests in that officer power to construe the decree. Petitioners do not amplify their point, nor do they call to our attention any provisions of the decree which are ambiguous, conflicting or suggestive of the necessity for construction or interpretation. An attack in language of such general nature does not throw upon the court the burden of examining the decree in detail to ascertain whether the arrow may find its mark in any specific provision.

Petitioners attack section 46½ as vesting original judicial powers in the state engineer and appellate powers in the district court, contrary to the provisions of our constitution. This they attempt to support by a discussion of various sections of the act but without reference to the many cases reaching this court in which a similar attack has been considered, especially after the 1913 act was amended in 1915 to cure the objections found in the opinions of the majority of this court in Ormsby County v. Kearney, 37 Nev. 314, 142 P. 803. This question was put to rest by Bergman v. Kearney,

230

241 F. 884, and Vineyard Land & Stock Co. v. District Court, 42 Nev. 1, 171 P. 166, in which the point was considered in extenso.

The petition for a writ of prohibition is denied and the proceedings dismissed.

EATHER and MERRILL, JJ., concur.