[No. 2579]

PACIFIC LIVE STOCK COMPANY (A CORPORATION),
v. ELLISON RANCHING COMPANY (A CORPO-
RATION).

JOHN M. LEGARZA, W. O. BARBER, JR., I. B.
ENGLISH, AND JOSEPH GIACOMENTO, PETI-
TIONERS, v. T. C. HART, DISTRICT JUDGE, RESPON-
DENT.          [213 Pac. 700]

1. CONSTITUTIONAL LAW—DISTRICT COURT MAY DECLARE LEGISLA-
TIVE ACT UNCONSTITUTIONAL.
    A district court has authority to declare an act of the
legislature unconstitutional.

2. CONSTITUTIONAL LAW—LEGISLATURE MAY REGULATE BUT CAN-
NOT ABRIDGE POWER OF COURTS TO PUNISH FOR CONTEMPT.
    While the legislature may enact laws which regulate the
exercise of the power of courts to punish for contempt, they
cannot diminish or abridge that power.

3. CONSTITUTIONAL LAW—STATUTE PROVIDING FOR JURY TRIALS IN
CONTEMPT PROCEEDINGS HELD VOID, AS ABRIDGING COURT'S
POWER TO PUNISH FOR CONTEMPT.
    Stats. 1913, c. 94, providing that, in all cases of contempt
arising without the immediate view and presence of the
court. the person charged with contempt may demand and
have a jury trial and in such cases the judge of the court
in whose contempt the defendant is alleged to be shall not
proceed over defendant's objection, is void as a substantial
abridgment of the inherent power of the court to punish
for contempt granted by the constitution.

ORIGINAL PROCEEDINGS in certiorari by John M.
Legarza and others against T. C. Hart, District Judge,
presiding in Sixth Judicial District Court, Humboldt
County, to review a judgment holding petitioners guilty
of a contempt, involved in an action by the Pacific Live
Stock Company against the Ellison Ranching Company.
**Proceedings dismissed.  Rehearing denied.**

*Warren & Dignan,* and *McCarran & Mashburn,* for
Petitioners:

The allegations in this affidavit simply amount to a
statement that defendants have violated the injunction,
which is a mere conclusion of the pleader and not a
statement of any facts. "The statute relating to con-
tempts and punishments must be strictly construed, and

no interpretation should be given beyond the obvious meaning." Ex Parte Sweeney, 18 Nev. 74.

The affidavit must set forth a statement of the facts constituting the contempt—the very facts it would be necessary to prove in order to secure a conviction on a charge of contempt committed without the presence of the court. Schwartz v. Superior Court, 43 Pac. 580; Berger v. Superior Court, 167 Pac. 143; Scattergood v. Superior Court, 173 Pac. 110; Ex Parte Hedden, 29 Nev. 352; Frowley v. Superior Court, 110 Pac. 817.

The trial court is without power or authority to pass upon the constitutionality of a statute. Neither the constitution nor any statute gives a district judge such power. The jurisdiction of inferior courts is fixed by law, and any attempt to exceed the limits so fixed is a usurpation of power. Smith v. Smith, 8 Am. Law Rep. 1149; International Mer. Mar. Co. v. Stranahan, 155 Fed. 428; In Re Thornburgh, 132 N. Y. Supp. 268. Even if a district court might determine the constitutionality of an act, it could do so only on the motion of a party directly interested. State v. Beck, 25 Nev. 69; Riter v. Douglass, 32 Nev. 400.

The statute permitting jury trials of the facts in certain contempt cases is not unconstitutional. The rules of law which govern this court in passing upon the constitutionality of statutes are clearly stated in Sawyer v. Dooley, 21 Nev. 390; Clark v. Irwin, 5 Nev. 111; Cutting v. Westerfield, 24 Nev. 29; Dayton M. Co. v. Seawell, 11 Nev. 394; Cooper v. Rollins, 6 R. C. L. 98.

The provision for a jury trial is merely a regulation of procedure. It does not attempt to deprive the court of any power.

*T. P. Wittschen,* for Respondent:

The authorities are uniformly against the validity of statutes granting a trial by jury in certain cases of contempt. While there is none directly in point in this state, an early decision favors our contention. Ex Parte Sweeney, 18 Nev. 74.

Whenever any attempt has been made in the past to curtail the right of the court to punish summarily for a contempt of court, the legislation has promptly been declared unconstitutional.   Carter v. Commonwealth, 32 S. E. 780; Smith v. Speed, 11 Okl. 95; State v. Morrill, 16 Ark. 385; Neel v. State, 9 Ark. 259; 50 Am. Dec. 209; Bradley v. State, 111 Ga. 168, 36 S. E. 630; State v. Clancy, 30 Mont. 193; In Re Debs, 158 U. S. 564, 39 L. Ed. 1092.

An affidavit which substantially stated that the decree was in full force and effect, and showed its violation by the defendant, was sufficient to give the court jurisdiction to punish for contempt.   Strait v. Williams, 18 Nev. 430; Phillips v. Welch, 12 Nev. 158; Ex Parte Ahmen, 77 Cal. 198.

Mere errors within jurisdiction are not reviewable. The court can only inquire into the jurisdiction and if the court regularly pursued its authority.   Rev. Laws, 5690; Maynard v. Railey, 2 Nev. 313; Maxwell v. Rives, 11 Nev. 219; Hetzel v. Eureka Co. Com., 8 Nev. 360; Kapp v. Dist. Ct., 31 Nev. 444; Phillips v. Welch, 12 Nev. 158.   An erroneous decree must be obeyed. High on Injunctions, 4th ed., sec. 1416.

By the Court, ORR, District Judge:

This matter is before us on a writ of certiorari to review a judgment of the district court, holding the petitioners guilty of contempt.

Petitioners contend that the district court exceeded its jurisdiction in the following particulars:   (1) That the affidavit upon which the proceedings in the lower court were instituted is wholly insufficient.   (2) That a district court is without authority to declare an act of the legislature unconstitutional.   (3) That the court erred in denying petitioners a jury trial and in holding the act of the legislature so providing unconstitutional. Stats. 1913, p. 117.

Counsel for petitioners have at some length endeavored to point out alleged defects in the affidavit and

have cited, in support of their contention, decisions from other states. At least three cases have been decided by this court dealing with the precise question under consideration here. The sufficiency of the affidavits in contempt proceedings for the alleged violation of water decrees was considered by this court in the cases of Phillips v. Welch, 12 Nev. 158; Strait v. Williams, 18 Nev. 430, 4 Pac. 1083, and the rule there expressed was held to be controlling on this court in the recent case of State v. Second Judicial District Court, 211 Pac. 105.

A comparison of the allegations of the affidavit under consideration here with those contained in the affidavits held to be sufficient in the cases cited, supra, at once discloses that the allegations are not only of the same kind and character, but in more detail. It would serve no good purpose to make such a comparison in this decision, as the sufficiency of the affidavit must at once be apparent, when considered in the light of the decisions of this court, and we believe it sufficient to say on this point that we must again adhere to the rule expressed in those cases.

1. We cannot agree with the contention of counsel for petitioners that a district court is without authority to declare an act of the legislature unconstitutional. This power has long been recognized as existing in courts of record, and, we believe, almost universally exercised by such courts in this country. The cases cited by petitioners, as well as those in addition which we have consulted, do not question the right, but deal with the caution with which such right should be exercised. With the ideas expressed as to the extreme caution to be used in such matters, we are in entire accord. It is not the existence of the power, but the exercise thereof, with which the courts of review have concerned themselves. It is urged that to recognize such power in district courts would lead to confusion because of the divergent views which might be entertained by the several courts. It is fundamental that such courts must be recognized to have power to effectively deal with

questions properly presented to them and necessary to the orderly and thorough disposition of cases and other matters under consideration, be that question the constitutionality of a given statute or its construction on other grounds.   Different courts, in construing and administering any statute, very naturally may entertain very different views, which would result in some confusion until settled by the higher court, but it could not be said that, because of such possible confusion, the power to construe and administer such statute should not exist.   Such a holding would manifestly tie the hands of the courts so as to render them impotent, and to say that they cannot pass upon the constitutionality of a statute would, in a lesser degree only, render them helpless to properly and expeditiously dispose of the business before them.

This brings us to a consideration of that which is deemed the important question in this case.   Is the statute of 1913, purporting to give the right of trial by jury in certain contempts of court, unconstitutional? In approaching the consideration of this question we are, as has been well said, "fully aware of the delicate duty involved in holding a statute unconstitutional, and we fully recognize that it should never be done, except in case of a plain deviation from the organic law," but, however delicate that duty may be, we cannot shirk it when its exercise is necessary.   As is stated in 6 R. C. L. p. 72:

"Since the constitution is intended for the observance of the judiciary as well as the other departments of the government, and the judges are sworn to support its provisions, the courts are not at liberty to overlook or disregard its commands, and therefore, when it is clear that a statute transgresses the authority vested in the legislature by the constitution, it is the duty of the courts to declare the act unconstitutional and from this duty they cannot shirk without violating their oaths of office."

That portion of the statute with which we are concerned here reads as follows:

"  *   *   *   That in all cases of contempt arising without the immediate view and presence of the court the person charged with contempt may demand and have a jury trial; *and provided further,* that in all cases of contempt arising without the immediate view and presence of the court, the judge of such court in whose contempt the defendant is alleged to be shall not preside at such trial over the objection of the defendant." Stats. 1913, p. 117.

2.   The question presented is not a new one.   It has been passed upon by many of the courts of the country, both state and federal.   The decisions are uniform to the effect that, while the legislature may enact laws which regulate the exercise of the power of courts to punish for contempt, they cannot diminish or abridge that power.   That power to punish for contempt is inherent in courts of record, created by the constitution, and cannot be substantially abridged or diminished by the legislature, is conceded in this case; but it is contended that the act in question in attempting to provide for the intervention of a jury is but regulatory and does not abridge or diminish the power of the courts to punish for contempt.

In the case of Carter v. Commonwealth, 96 Va. 791, 32 S. E. 780, 45 L. R. A. 310, the Virginia Supreme Court of Appeals was called upon to pass upon the constitutionality of an act of their legislature, attempting to give the right of trial by jury in certain contempt cases, and permitting the jury to fix the punishment. The contention was there made that the act in question was not obnoxious to the objection that it interfered with or diminished the power of the court to protect itself, but was merely regulatory, but, in answer thereto, the court said:

"To this view we cannot assent.   It is not a question of the degree or extent of the punishment inflicted.   It may be that juries would punish a given offense with more severity than the court; but yet the jury is a tribunal separate and distinct from the court.   The

power to punish for contempts is inherent in the courts, and is conferred upon them by the constitution by the very act of their creation. It is a trust confided and a duty imposed upon us by the sovereign people, which we cannot surrender or suffer to be impaired without being recreant to our duty."

And quoting further from the same case:

"Reading the constitution of the state in the light of the decisions of eminent courts which we have consulted, we feel warranted in the following conclusions: That in the courts created by the constitution there is an inherent power of self-defense and self-preservation; that this power may be regulated, but cannot be destroyed, or so far diminished as to be rendered ineffectual by legislative enactment; that it is a power necessarily resident in, and to be exercised by, the court itself, and that the vice of an act which seeks to deprive the court of this inherent power is not cured by providing for its exercise by a jury; that, while the legislature has the power to regulate the jurisdiction of circuit, county, and corporation courts, it cannot destroy, while it may confine within reasonable bounds, the authority necessary to the exercise of the jurisdiction conferred."

It is contended that the case of Carter v. Commonwealth, supra, should be distinguished from the instant case in this: The Virginia statute attempted to confer the right to have a jury determine, not only the guilt or innocence of a party charged with contempt, but, in the event of a finding of guilty, to fix the punishment, while the Nevada statute merely provides that the jury may determine the guilt or innocence. The difference existing in the statutes could have no bearing on the question involved. If a provision for the intervention of a jury abridges the power of a court to punish for contempt, it is the act of transferring such power to a jury at all that is violative of the right inherent in the court, and the Virginia statute by its further provision could only be said to have attempted an abridgment in a greater degree. This furnishes a striking example of

the fact that, should it be recognized that the legislature has the power to provide for the intervention of a separate tribunal in trials for contempt, there is no line at .which they could be required to stop short of divesting the courts of all power to punish for contempt, and then, as was said by this court in Ex Parte Sweeney, 18 Nev. 74, 1 Pac. 379: "The judiciary would, indeed, hold but a barren scepter.   *   *   * "

Prior to the adoption of the present constitution of the State of Oklahoma (right of trial by jury, in contempt cases, is now expressly provided in the Oklahoma constitution), the legislature enacted a law attempting to give .the right of trial by jury in contempt cases. This act was held unconstitutional, and in deciding the question in the case of Smith v. Speed, 11 Okl. 95, 66 Pac. 511, 55 L. R. A. 402, the court said:

"It cannot be conceded that the right to punish a contempt may be turned over by the legislature to a separate tribunal.   *   *   * The legislature itself, and the powers with which it is vested, have been created by the same organic act as that which created, organized and prescribed the jurisdiction of these courts. The courts and the legislature are of coequal origin. Neither may interfere with the proper sphere of the other. The legislature and its acts, within their proper sphere, are entitled to the support of the courts. The courts, when exercising their authority as prescribed by the organic act, and in the exercise of that inherent power, which is necessary to their preservation, to the enforcement of the rights which they are compelled to pass upon, and of the preservation of their dignity and the respect which they are entitled to, have also a right to the consideration of the legislature, and these mutual relations of respect and mutual efforts of preservation will, no doubt, always exist when their proper relations and the necessity for their individual existence and authority of each are properly understood."

The district court for the Southern district of Florida, in the case of In Re Atchison, 284 Fed. 604, had under

consideration the constitutionality of the Clayton act (38 Stat. 730), which gives the right of trial by jury in certain cases of contempt, and while it is not exactly clear as to whether the decision rested on the constitutionality of that portion of the act, or that the alleged contempt did not come within the purview of the act, the court, during the course of the decision, made the emphatic declaration that it considered the provision of the act providing for a jury trial unconstitutional.

3.   The declaration of the court in that case goes much further than we are prepared to admit here, viz: That a legislative body creating a court could not abridge its power to punish for contempt.   As before stated, the cases dealing with the different phases of this question are numerous.   The citations made and quotations therefrom indicate the reasoning employed, and further citation and quotation would unnecessarily prolong this decision.   The citations made we believe sufficient to lead any who may care to investigate further into those numerous cases, and we further believe that all the authorities on the subject deny the right of a legislature to provide for the intervention of a jury in contempt cases.   There is no authority to the contrary, and no line of reasoning which we have heard advanced in this case or that suggests itself to us which would admit of a contrary view, and we cannot escape the conclusion that such a provision as enacted in the statute of this state is a substantial abridgment of the powers granted to the courts of this state by the constitution. Hale v. State, 55 Ohio St. 10, 45 N. E. 119, 36 L. R. A. 254, and note, 60 Am. St. Rep. 691; Neel v. State, 9 Ark. 259, 50 Am. Dec. 209; Bradley v. State, 111 Ga. 168, 36 S. E. 630, 50 L. R. A. 691, 78 Am. St. Rep. 157; State v. Clancy, 30 Mont. 193, 76 Pac. 10;   In Re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092.

In concluding this decision, we feel constrained to say something relative to the suggestion made in the argument to the effect that a holding that the provision of

the statute for the intervention of a jury abridged or diminished the power of the court to punish for contempt would be to express a lack of confidence that juries would perform their sworn duty. Not at all. We have the utmost faith in that time-honored institution, and we are deeply conscious of the important, patriotic, and credible part juries have taken in the administration of justice in this country. Especially is this true in this state. We are deeply conscious of the fact that the jury panels are composed, in a singularly large measure, of the substantial citizenship of the state, men and women who have a pride in their courts and are jealous of the maintenance of their integrity, dignity, and honor. No court in this state would, for a moment, hesitate to submit a question of an infringement of their dignity to a jury because of any fear that it would not be fully maintained. The question here goes much further than that. It is this essential proposition that the people have spoken through the organic law, and, in thus speaking, having invested the courts with certain powers, among which is the power to punish for contempt; that power must remain vested there, not to be disturbed by any but the people themselves, which they can do, and they alone, by proper amendment of the organic law. In so declaring we but reaffirm the principle that the three great divisions of this state government must remain separate and distinct, each retaining the powers invested by the constitution without encroachment one upon the other.

The legislature did not give to the courts power to punish for contempt; the legislature cannot take it away nor abridge or diminish it. We repeat the conclusion that the provisions of the statute of 1913, providing for the intervention of a jury in trials of certain contempts, is a substantial abridgment of the inherent power of the courts to punish for contempt, and, in attempting to so provide, the legislature exceeded its powers, and consequently the said act, in so far as it relates to a jury trial, is unconstitutional and void.

For the reasons given, it is ordered that these proceedings be, and the same are hereby, dismissed.

COLEMAN, J.: I concur.

SANDERS, J.: I concur.

NOTE—DUCKER, C. J., being disqualified, the Governor designated Hon. WM. E. ORR, District Judge, to sit in his stead.

### ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.