HEFLINGER *v.* HEFLINGER.

No. 8189. JUNE 12, 1931.

*Hewlett & Dennis* and *E. W. Fountain,* for plaintiff in error.
*Austin & Boykin* and *Frank A. Doughman,* contra.

HINES, J.   On January 31, 1924, Clelia Heflinger obtained against her husband, Charles Heflinger, in Fulton superior court a verdict and judgment for the sum of $37,500 as permanent alimony. The husband failed to pay said sum or any part thereof.   His wife by proper proceedings sought to have him attached for contempt

of court for his failure to pay said alimony judgment, and he was committed to the common jail of Fulton County until such time as he shall have purged himself of such contempt by paying as much as $15,000 on account of the alimony due under said judgment. On September 29, 1930, the husband filed his application for modification of said judgment finding him in contempt of the court and committing him to jail until such time as he shall purge himself of the contempt as therein provided, and for his discharge from said judgment of contempt and from the common jail of Fulton County. He based his application for said modification and discharge upon the ground that he had not been able since said judgment was passed, and was not then able, to pay said amount in order to purge himself of the contempt of the court, he being destitute of funds and having no means by which he could raise any money to pay the same. This application came on to be heard on November 1, 1930. On said hearing the applicant introduced the evidence which was adduced upon the trial of the proceeding in which he was adjudged in contempt of the court for his failure to pay the alimony judgment. This was done by consent of counsel and by direction of the court. The material parts of this evidence on the issue involved in this proceeding are substantially as follows:

In the latter part of May, 1930, the husband was arrested in Toledo, Ohio, under extradition papers issued by the Governor of this State; and was brought back to Georgia. On the way back he spoke to those in charge of him of this alimony judgment. He said: "It won't do them any good. I haven't any money. I did make some money, $53,000 last year, but I lost $40,000. I couldn't raise $500 at this time. If they had come to me a year ago I could have paid something, but now I can't pay anything."

On the hearing when he was adjudged in contempt the husband testified as follows:

I have not been in Georgia since the alimony judgment was obtained. Was never in this State from 1922 until brought back under the extradition papers. Have not got any money now with which to pay the alimony judgment. It is all gone. I have paid my attorneys $300, and that is all the money I had in the world. I do not own any property, stocks, or bonds. Have not had any money since last October. The daughter of my first wife is

taking care of her and my little girl by that wife. I am trying to get a job. That is the only way I can raise any money. Had an engagement with the Landis Corporation in Toledo on the afternoon of the day I was arrested, and expected to get a job traveling for them. When I was arrested I did not consent to be brought back into Georgia on these extradition papers. I wanted to see my attorney and wanted to get a hearing, but this was refused me. Have been in Toledo about three years. I did not tell Mr. Atkinson, who was bringing me back to Georgia, that I could have paid the alimony judgment last fall, that I had the money to pay it with. Never had that much money in my life. Never did tell him that I made $53,000 at one time, and that I had that much until the stock market took away $40,000. Made some money, but it was paper profits. I traveled for the Standard Parts Company for $250 per month and my traveling expenses. Represented one other concern on a commission basis, which brought me in about $2,000 a year. Traveled for F. B. Carr Company, Boston. I don't know what it netted me. It was less than $5,000. Represented the Kotex Company of Newark for one year. I did not make several thousand dollars for my commissions. Represented the Durotex Company of Newark in 1921 and 1922. Sometimes I made $150 per month, and sometimes $250. The government took my residence lot in Hampton Roads near Old Point Comfort, Virginia, for which I got $6,000. I had a house on Cates Avenue in St. Louis, Mo., which I sold for $6,000. I went to California in January, 1923. Found that my first wife, Mrs. Verna B. Heflinger, was living at Ocean Park, Cal. I had been divorced from her since 1916, and had made a settlement with her. After I was divorced from my first wife I married Mrs. Clelia Heflinger in 1920. I have now a diamond ring with two genuine emeralds. It would not bring $250. I had regular employment as a salesman up to 1923. Since that time for several years I have not had regular employment at all. I have not done any trading or made any money, except some trading on the stock market. I have been doing this since I came to Toledo in 1927. During the last three years I made some money, and then lost it in three days. Lost it in the big decline in last October. Lost about $40,000. Owe my brokers now, and can not pay them.

The wife testified that after she had obtained her alimony judg-

ment in 1924, she went to California, that she made an investigation as to the financial condition of Heflinger there, that she found him living with another woman in a residence in a very exclusive section, and that she saw him riding in high-powered automobiles.

On the hearing of the application for modification of, and discharge from, the contempt judgment, Heflinger testified as follows: Since the trial of the contempt proceeding I have not been able to raise the $15,000 assessed against me by the court. I have not been able to raise any money at all since that time. At the time of the hearing I did not have any money. I gave my attorneys the last I had. I have no property, no stocks, no bonds, nor any realty or choses in action. I have no position whereby I can pay alimony. I have been associated in jail with Mr. Eden. He was a cellmate of mine for awhile. I did not tell him that I never did intend to pay this woman one dime of the alimony for which she had judgment against me. Never told him that my lawyers had advised me that if I stayed in jail three months that they would get me out without the payment of any money. My lawyer had at first said that after three months he might be able to get me out.

W. O. Eden testified for plaintiff, as follows: I was a cellmate of Heflinger part of the time. He discussed with me the matter of his paying this alimony. He said he was not going to pay it. He said, "My lawyers told me that I will have to stay in jail about 90 days, and will be released at that time." He said, "I will not pay these damn people a dime." He said that several times. I have been in penitentiary several times. I have been in the Federal Prison. I was found guilty of burglarizing a store and was sent to the penitentiary for that, but I was innocent.

The trial judge passed an order denying the application of the husband for a modification of, and a discharge from, the judgment finding him in contempt of the court for failure to pay the alimony judgment obtained by the wife, and fixing the terms upon which he could purge himself of the contempt. To this judgment the husband excepts, and says that the court erred upon the grounds (a) that it was contrary to law and was without evidence to support it, (b) that it amounts to a perpetual imprisonment for debt, and (c) that it was an abuse of the court's sound discretion, for the reason that the evidence disclosed conclusively that the husband was financially unable to comply with the judgment of the court order-

ing him to pay $15,000 in order to purge himself of the contempt.

■ Where the uncontroverted evidence shows the inability of the husband to pay the judgment awarded his wife for permanent alimony, it is error to adjudge him in contempt or to keep him confined in jail under an order adjudging him in contempt. *Potter* v. *Potter,* 145 *Ga.* 60 (88 S. E. 546) ; *Lightfoot* v. *Lightfoot,* 149 *Ga.* 213 (99 S. E. 611) ; *Newsome* v. *Newsome,* 155 *Ga.* 412 (117 S. E. 90).; *Blair* v. *Blair,* 166 *Ga.* 211 (142 S. E. 743) ; *Wooward* v. *Wooward,* 172 *Ga.* 713 (158 S. E. 569). Under the evidence in this case we can not say that the judgment of the trial judge is without evidence to support it. The alimony judgment was rendered on January 31, 1924. The husband has never paid the wife any amount of this judgment. It is true that, taking his evidence as entirely true, he is now unable to pay this judgment. There is evidence authorizing the judge to find that the husband was a salesman of high earning capacity, that his manner of living shows that he is a man of means, and that since the rendition of this judgment he was certainly able to make the wife payments upon the same. There is evidence to show that he had earned a large amount of money the year before he was adjudged in contempt of the court. It is true that he claims that he lost $40,000 of the $53,000 which he earned in stock speculation during the year 1929. He does not account for the difference of $13,000. The evidence discloses that he received from the sale of real estate considerable sums of money. The evidence discloses that he received large income from salaries and commissions as a salesman up to 1923. There is further evidence that the husband had been advised that, if he was committed for contempt for failing to pay alimony to his wife, he would probably be discharged in about three months; and the inference from this fact may be drawn that he preferred temporary confinement in the jail to the payment of large alimony to his wife. The evidence further discloses that he had declared that the wife never should get a dime on her alimony judgment. From these and other facts appearing in the record we can not say that the trial judge erred in refusing to discharge the husband from custody. In a case of this kind the punishment of the husband for contempt is a remedial process necessary to the administration of justice and to secure to the wife the alimony which has been awarded her. The punishment by confinement in

the jail is a remedy necessary for the protection of the rights of the wife, though it may not be necessary for the vindication of the authority of the court. *Howard* v. *Durand,* 36 *Ga.* 346 (91 Am. D. 767) ; *Drakeford* v. *Adams,* 98 *Ga.* 722 (25 S. E. 833) ; *Briesnick* v. *Briesnick,* 100 *Ga.* 57 (28 S. E. 154) ; *Van Dyke* v. *Van Dyke,* 125 *Ga.* 491 (54 S. E. 537) ; *Wilkins* v. *Wilkins,* 146 *Ga.* 382 (91 S. E. 415) ; *Gorham* v. *Gorham,* 147 *Ga.* 433 (94 S. E. 555) ; *Woodall* v. *Woodall,* 147 *Ga.* 676 (95 S. E. 233). In view of the large amount of alimony involved, the trial judge could well find that the application of this remedy for a period of five months was not sufficient to test the inability of the husband to pay this alimony.

■ It is next urged that the denial by the court to discharge the husband amounts to a perpetual imprisonment for debt, for the reason that in denying his application for discharge the court makes the judgment committing him for contempt absolute, and for this reason he can never be discharged from imprisonment. The enforcement of a final decree awarding alimony to a wife by attachment for contempt is not equivalent to imprisonment for debt. *Carlton* v. *Carlton,* 44 *Ga.* 216 ; *Lewis* v. *Lewis,* 80 *Ga.* 706 (6 S. E. 918, 12 Am. St. R. 281) ; *Lamar* v. *Lamar,* 123 *Ga.* 827 (51 S. E. 763, 107 Am. St. R. 169, 3 Ann. Cas. 294). The judgment complained of is not conclusive as to the duration of the imprisonment. The refusal to modify the judgment finding the husband in contempt is no more conclusive than the judgment adjudging him in contempt. We have seen that attachment for contempt in this case was remedial. To guide the discretion of the court in administering remedial punishment, the term of which is not fixed by law, all pertinent facts may be adduced and considered, no matter whether they be consistent or inconsistent to the previous judgment in the same or in any other case. If so, the imprisonment might be perpetual. *Kingsbery* v. *Ryan,* 92 *Ga.* 108 (2) (17 S. E. 689). So the judgment complained of is not an adjudication that the husband must be perpetually imprisoned for his failure to pay alimony to his wife.

■ It is next urged that the court erred in denying the husband's application for discharge on the ground that the judgment of denial is an abuse of the court's discretion, for the reason that the evidence disclosed conclusively that the defendant was financially unable to

comply with the judgment of the court ordering him to pay $15,000 on the alimony judgment in order to purge himself. The fixing of an amount the payment of which would purge the husband of the contempt and entitle him to a discharge does not amount to an adjudication that he will never be discharged until said amount is paid. Furthermore, the evidence introduced does not demand a finding that he was unable to pay this sum on the alimony judgment. Certainly it is not conclusive that he was unable to pay anything on the alimony judgment. If after a reasonable term of imprisonment the conscience of the judge should be convinced that the husband was unable to pay this amount upon the alimony judgment, he should be discharged from further confinement. So we do not think that the judge, whose heart is full of the milk of human kindness, abused his discretion in refusing to discharge the husband from confinement under the judgment of contempt in this case. *Judgment affirmed. All the Justices concur.*