JEAN MULLANEY McCORMICK, DONNIE BUSEY AND CLAYTON E. GUNN, PETITIONERS, *v.* THE SIXTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF HUMBOLDT AND MERWYN H. BROWN, JUDGE OF SAID COURT, RESPONDENTS.

No. 3612

May 15, 1950.                    218 P.2d 939.

*Sidney W. Robinson* and *John C. Bartlett,* both of Reno, for Petitioners.

*Sanford A. Bunce,* of Lovelock, and *J. D. Skeen,* of Salt Lake City, Utah, for Respondents.

## OPINION

By the Court, BADT, J.:

Petitioners seek to prohibit the respondent district court and the respondent presiding judge thereof from proceeding with the hearing initiated by Bessie L. Ellison, Lyle L. Ellison, Claude Larkin Ellison and Melba E. Ellison as the successors in interest of Ellison Ranching Co., a corporation, to hold the petitioners in contempt if they persist in violating a decree of said court adjudicating the water rights of Quinn River and of McDermitt Creek, one of its tributaries.

Petitioners assert three reasons in support of their contention that respondents are without jurisdiction to proceed: (1) because of the filing of the statutory affidavit and objection under the second proviso of sec. 8943, N.C.L.1929; (2) because the necessary parties are not before the court; and (3) because the contempt charges are not brought upon an affidavit but upon a petition verified only on information and belief.

On the hearing of the return of the alternative writ of prohibition counsel for the Ellisons appeared on behalf of the respondent court and judge and submitted a motion to quash upon the ground that the proviso contained in sec. 8943, N.C.L.1929 disqualifying the judge of the district court from presiding over the trial for an indirect or constructive contempt of a decree of the court applied only in cases where such judge had himself rendered the decree in question. They also contend that all necessary parties were before the court and that the verification of the contempt petition on information and belief satisfied the statute.

The hearing on the return of the alternative writ and the hearing on the motion to quash were consolidated and presented and submitted to this court at the same time. Before proceeding to a discussion of the points

involved a brief history of the case as reflected from the files and opinions of this court will be in order.

The litigation was initiated in 1907 by a suit in equity seeking to establish and quiet title to the water rights of sundry appropriators on the Quinn River system. Additional parties were joined and sundry defendants affirmatively pleaded their rights as cross-complainants and the litigation, although a suit in equity, resolved itself into a general adjudication of the respective and relative rights of the water users on the system. On April 19, 1919, Hon. E. J. L. TABER, later the chief justice of this court, but then presiding district judge of the Fourth judicial district court in and for Elko County, presided over the action in what was then part of the Second judicial district court in and for Humboldt County and rendered the final decree of that court adjudicating the rights of the various users with great particularity, specifying the priority and the amount of water in cubic feet per second appropriated by each party, the stream and tributary from which each appropriation was made, the place of appropriation, the number of acres irrigated, etc.; the title of each party was quieted as to the rights adjudicated and appropriate injunctive clauses against interference were included. Thereafter the matter came before this court on four occasions. The present proceeding is the fifth.

In 1921 the case came before this court on a motion to dismiss the appeal from the judgment and from the order denying new trial. We denied the motion to dismiss for the reason that the questions involved required a careful examination of the record and a consideration incidentally of the merits of the appeal, and it was ordered that the motion to dismiss stand over to be heard and determined upon the presentation of the appeal on its merits. Pacific Live Stock Co. v. Ellison Ranching Co., 45 Nev. 1, 192 P. 262. This was under the file number 2448 in this court. Mr. Justice SANDERS wrote the opinion. Mr. Justice DUCKER did not participate.

In 1923, under No. 2579, entitled Pacific Live Stock Co. v. Ellison Ranching Co.; Legarza v. Hart, district judge, 46 Nev. 351, 213 P. 700, certiorari was sought to review a judgment holding the petitioners guilty of contempt. District Judge Orr wrote the opinion for this court, Chief Justice Ducker being disqualified. The petitioners, being the contemners below, had demanded a jury trial under the statute—the contempt not being in the presence of the court. The district judge had denied a jury trial, holding the statute to be unconstitutional. This court agreed and dismissed the proceedings in certiorari.

The matter was next before this court in 1930 under Nos. 2448 and 2449 in 52 Nev. 279, 286 P. 120. The appeal was on the merits and the court again considered and referred to the prior motion to dismiss. The main ground of this was that of the forty or fifty parties to the suit only a few had been served with the notice of appeal. Appellants claimed that the ones not served were in no sense adverse. This court held however that respective and relative rights of all of the parties were involved and that this court had no jurisdiction of the appeal on account of failure to make service of the notice of appeal on all adverse parties. The order was not only for the dismissal of the appeal but also for the affirmance of the order denying appellants' motion for new trial, as the notice of intention to move for a new trial had likewise not been served on many of the parties not deemed by movants to be "adverse." (No. 2449 concerned an order permitting amendment of answers after submission. These answers contained additional allegations as to the tributary character of a number of additional creeks as tributaries of the Quinn River.) Sanders, J., wrote the opinion.

In 1931 in Pacific Live Stock Co. v. Malone, 53 Nev. 118, 294 P. 538, in an opinion written by Moran, district judge, this court denied mandamus which was sought by the Pacific Live Stock Co. to compel the state engineer to administer the distribution of the waters of Quinn

River in accordance with the decree. Mandamus was sought on the ground that it was the statutory duty of the state engineer to administer and distribute the water in accordance with the 1919 decree. The court however held that the state engineer's duties under the statute arose only as a result of a decree in a general adjudication proceeding, whereas this was an equity suit.

By sec. 46½ of the water law, Statutes 1947, c. 159, p. 519, the legislature provided for the making of an order by a district court, on petition, that the state engineer make a hydrographic survey and distribute the water on any stream system on which the rights of all water users have been determined otherwise than (the statute reads "than otherwise") provided in sections 18–51 of the water law, Laws 1913, c. 140. This act of 1947 adding section 46½ to the water law was enacted apparently for the purpose of abrogating the objection found in Pacific Live Stock Co. v. Malone, supra, to the administration of the decree by the state engineer.

The record under No. 2448 remains in the files of the clerk of this court. The transcript consumes some 7,000 typewritten pages and the file contains numerous exhibits including maps picturing the entire stream system (with the exception of those parts existing in the State of Oregon), the various dams, ditches, and canals and the irrigated lands of the several parties.

■ We turn first to the sufficiency of the verification of the contempt petition to confer jurisdiction on the respondent court. The petitioners in this court rely upon the provisions of section 8943, N.C.L.1929, reading in part as follows: "When the contempt is not committed in the immediate view and presence of the court or judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt * * *."

Petitioners frankly concede that a duly verified petition for an order to show cause in contempt would be equivalent to the "affidavit" mentioned in the foregoing section, and cite a number of authorities holding that in

view of the criminal or quasi-criminal nature of the proceedings a petition verified only upon information and belief, without even reciting the nature of the information or the facts upon which the belief is based, is so lacking as to be halted by prohibition. Cases cited by respondents call attention to the fact that the statute contains no provisions requiring a verification by an affiant knowing the facts of his own knowledge, and hold that an affidavit or petition verified on information and belief is sufficient to invoke the jurisdiction of the court. The cases are not harmonious, and we do not find it necessary, for the purposes of this case, under the facts appearing in our own opinions and records, to adopt either rule as controlling in this jurisdiction. See Creekmore v. United States 10 Cir., 237 F. 743, L.R.A. 1917C, 845. And the same matters thus appearing to this court, likewise appear to the respondent district court, both from its own files and from the various remittiturs sent down from this court. The petition to the district court for an order to show cause in contempt, verified on information and belief, alleges as facts: The entry of the decree of 1919; the adjudication therein of various water rights to the predecessor of the petitioners showing dates of priorities (the earliest being 1874), the number of cubic feet per second awarded for each separate appropriation (aggregating 37.84 cubic feet from Quinn River), the source, the number of irrigable acres, and description in legal subdivisions; the dependence of the lands on the waters of McDermitt Creek as contributing the larger part of the flow of Quinn River. A positive verification would add nothing to the strength of these allegations. There is then an allegation of certain successorship in the lands and water rights owned. The very title of the case indicates numerous substitutions of parties in place of their respective predecessors in interest. When we remember that the litigation was initiated in 1907, the decree entered in 1919, and the petition filed in 1950, changes in ownership are readily understandable. An information and belief verification

of such an allegation is all that could reasonably be expected.

The contempt petition then alleges the construction in 1943, of a rock and concrete dam across the channel of McDermitt Creek, by the alleged contemners and the United States government, pursuant to an agreement entered into between them in 1939. To divert the flow of a river which in time of high water must carry many times the flow of 38 cubic feet of water per second[1] allotted to Ellison Ranching Co., this must be a structure for all to see—unless it is simply a figment of the imagination. If the latter should be the case, of course the whole contempt proceeding fails. The precise location of the dam is stated as "at a point 7073.70 feet south 54°31′ west from the corner common to sections 3, 4, 9, and 10, Township 47 North, Range 37 East, M.D.M." We are unwilling to adapt to this case a rule which, doing justice to nothing but its own rationale, will require a new proceeding, initiated by a new contempt petition in which an affiant will state positively rather than on information and belief, that the dam is there. The additional allegation that such rock and concrete dam across the channel of McDermitt prevents the water from flowing down to serve the priorities of the successors of Ellison Ranching Co. is self-evident and would not be strengthened by a positive verification. The final allegations that the acts of the alleged contemners were willful and that they threaten to continue the same are purely formal and, in the last analysis, mean as much when stated on information and belief as if stated positively.

In view of the foregoing analysis of the situation it cannot be said that the contempt petition, although verified only on information and belief, was insufficient to

---

[1]This amount of water would necessarily be based on the theory of a continuous flow throughout the irrigation season, which would serve not only the Ellison priorities, but many others. Such continuous flow does not exist on this stream system, and the amounts of water allotted to the several priorities (measured in acre-feet) would have to be made up in the period of flood flow, or high flow or flash flow.

invoke the jurisdiction of the district court. Bridges v. Superior Court, 14 Cal. 2d 464, 94 P.2d 983; In re Simoniello 6 Cal.App.2d 425, 44 P.2d 402.

The next contention of the present petitioners, the alleged contemners below, is stated as follows: "It is undisputed that the United States has an interest in the maintenance of the dam and assisted in the construction of the dam in question. The basic relief sought in the proceeding before the trial court is the removal of the dam from its present location. It seems clear that the request for a punishment by way of contempt is purely incidental to the removal of the dam * * * Any order made by the trial court and directed to petitioners herein to remove the dam would require petitioners to destroy property of the United States or be in contempt of court." In other words, as this is a civil or perhaps quasi-criminal contempt, coercive in its purpose, the inability of the contemners to obey the order (without fault on their part) would be a complete defense and sufficient to purge them of the contempt charged. But in connection with this well-recognized defense two comments are necessary. Where the contemners have voluntarily or contumaciously brought on themselves the disability to obey the order or decree, such defense is not available. Chesapeake & O. Ry. Co. v. Burke's Adm'x, 299 Ky. 851, 187 S.W.2d 295. See Anno. 22 A.L.R. 1256; Going v. Going, 148 Tenn. 522, 256 S.W. 890, 31 A.L.R. 649; Wohlfort v. Wohlfort, 116 Kan. 154, 225 P. 746, 40 A.L.R. 546; Heflinger v. Heflinger, 172 Ga. 889, 159 S.E. 242, 76 A.L.R. 390. And the burden of proving inability to comply is upon contemners. Rappaport v. Superior Court, 39 Cal.App.2d 15, 102 P.2d 526; 12 Am.Jur. 438, Contempt, sec. 72, 17 C.J.S., Contempt, sec. 19, p. 24. We are not satisfied that inability to comply affirmatively appears from the allegation in the contempt petition that the dam was built by the alleged contemners *and* the United States in 1943 pursuant to an agreement entered into between them in 1939. We know nothing of the terms of that agreement.

We know nothing of what transpired since the decree of 1919 except what has been presented to this court in the four prior proceedings above described. Nor can we say at this time what significance there is in the caption of the district court pleadings indicating that "Carson Indian Agency, Bureau of Indian Affairs, Department of the Interior, United States Government" and others "were made parties by an order dated January 10, 1949." It is essentially the province of the respondent court to pass upon these things, all involving as they appear to do, the question of the ability or inability of the alleged contemners to comply. We therefore hold this assignment to be without merit.

We have felt it necessary to rule upon the foregoing two points for the guidance of the respondent court when the case is remanded for further proceedings. As to such two points and as to the asserted ambiguity of the contempt petition, the action of the district court in overruling the demurrers and denying the motions to strike is approved.

The third ground relied upon in support of the petition for writ of prohibition applies not to the respondent district court, but to the respondent district judge as the judge of said court. This grows out of the refusal of the learned district judge to honor the objection of the alleged contemners to his presiding over the contempt trial, which objection was made under the provisions of sec. 8943, N.C.L.1929. The section first provides for punishment for a direct contempt and then reads as follows: "* * * When the contempt is not committed in the immediate view and presence of the court or judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators; *provided,* that in all cases of contempt arising without the immediate view and presence of the court the person charged with contempt may demand and have a jury trial; *and provided further,* that in all cases of contempt arising without the immediate view and presence of the

court, the judge of such court in whose contempt the defendant is alleged to be shall not preside at such trial over the objection of the defendant."

The first proviso, allowing a jury trial in cases of an indirect contempt, was held by this court to be unconstitutional in Pacific Live Stock Co. v. Ellison R. Co. (Legarza v. Hart, District Judge) 46 Nev. 351, 213 P. 700. It is contended by the respondent district judge that it was clearly the intention of the legislature to disqualify, upon objection, *only the district judge who made the decree*. We do not have the learned trial judge's opinion in the record, but it was stated during the course of the oral argument that such was his reason for overruling the objection to his presiding. If the language of the proviso were ambiguous there might be room for interpretation or construction. It is, however, clear and unambiguous. The judge of the "court in whose contempt the defendant is alleged to be" is, upon objection, precluded from presiding in the trial of the contempt charge. If such disqualification was within the constitutional limitation of the powers of the legislature, this court has no right to eliminate from the sphere of its application everything but a distinct, and perhaps small, portion thereof. We are not impressed by the argument that the holding in the Legarza case that the first proviso is unconstitutional necessarily carried the second proviso with it. This contention is based upon the assertion that the prohibition of the judge's presiding "at such trial" can refer only to the jury trial mentioned in the first proviso. We are of the opinion that the trial referred to is the trial of the contempt charge. The two provisos sought to provide two distinct and separate shields against a possible prejudiced attack. One was by the right to demand a jury trial. This we struck down in the Legarza case. The other is the disqualification, on objection, of the judge of the particular court. For the same reason we reject the contention that the second proviso is "so dependent upon," and so "confined to the language immediately preceding it" and "not properly

severable," that it must fall with the first proviso under the rule enunciated in State ex rel. Clover Valley Lumber Co. v. Sixth Judicial District Court, 58 Nev. 456, 467, 83 P.2d 1031, 1035.

It is now contended by the respondents that this second proviso (if given the meaning which we hold it clearly expresses) is likewise void as an attempted interference with the inherent power of the court to enforce its orders and decrees by contempt proceedings. It is our opinion that such contention is without merit, bearing in mind the full and exclusive authority of the legislature in all matters of legislation so long as it does not transgress the bounds of some constitutional limitations.

Respondents, in attacking the constitutionality of the second proviso, rely upon the reasoning contained in Pacific Live Stock Co. v. Ellison, 46 Nev. 351, 213 P. 700; Phillips v. Welch, 12 Nev. 158; State ex rel. Malone v. District Court, 52 Nev. 270, 286 P. 418, and In Re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092. We are in full accord with these cases, and with the many authorities therein cited, all proclaiming in ringing tones the inherent power of the courts to protect and defend their decrees by contempt proceedings, beyond any power of the legislature to abridge. But the basis of the opinion in Pacific Live Stock v. Ellison was that the legislature in providing for a jury trial, took the matter out of the hands of the court and placed it in "a tribunal separate and distinct from the court." [46 Nev. 351, 213 P. 702.] This was likewise the reasoning of the Supreme Court of Virginia in Carter v. Commonwealth, 96 Va. 791, 32 S.E. 780, 45 L.R.A. 310, there quoted at length by Judge ORR, but the right of the legislature to *regulate* the exercise of the power to punish for contempt was frankly conceded. In Smith v. Speed, 11 Okl. 95, 66 P. 511, 55 L.R.A. 402, also quoted by Judge ORR, emphasis was again placed on the legislative attempt to "turn over * * * to a separate tribunal" the right to punish for contempt. And the statement of the court relied upon

in Phillips v. Welch was that no *other court* except the one rendering the decree could punish for contempt. Likewise in Mr. Justice Brewer's opinion in the famous Debs case, vigorously upholding the inherent power of a court to punish for contempt and to make its own inquiry as to whether there had been any disobedience of its orders, what was condemned was the claim of right "to submit the question of disobedience to *another tribunal*, be it a *jury or another court* * *." [158 U.S. 564, 15 S.Ct. 910.] The second proviso of sec. 8943, N.C.L.1929 creates no such situation. Under its provisions the identical court whose decree is claimed to have been violated hears and determines the contempt charge. It is not ousted of its jurisdiction. There is no transfer to a different tribunal. Only the judge of that court becomes disqualified when the proper objection is made. Disqualification of judges, under the regulatory power of the legislature, is by no means new to our statutes. Under the first subdivision of sec. 8407, N.C.L. 1931–1941 Supp., a judge may not act as such in any action or proceeding when he is interested therein; under the second subdivision, when he is related to a party within the third degree of consanguinity or affinity; under the third subdivision, when he has been attorney for either of the parties in the particular proceeding; under the fourth subdivision, when he is related within the third degree of consanguinity or affinity to an attorney for either side. Under the fifth subdivision (when reading as amended by Stats. 1931, p. 247, c. 153) a district judge was required to transfer to another department of the court, or to request the judge of some other district court to preside at the trial of any civil action if a party, his attorney or agent filed an affidavit that he believed or had cause to believe that on account of the bias or prejudice or interest of said judge he could not obtain a fair and impartial trial. The amendment was upheld by this court in State ex rel. Beach v. Fifth Judicial District Court, 53 Nev. 444, 5 P.2d 535. A further amendment of the fifth subdivision enacted by Stats.

1937, p. 214, c. 117, providing for a change of judge on the mere request of a party was held by this court to be unconstitutional in State ex rel. Clover Valley Lumber Co. v. Sixth Judicial District Court, 58 Nev. 456, 83 P.2d 1031, leaving the 1931 amendment in effect. As amended by Stats.1939, p. 255, c. 173, the judge is required to transfer the trial of a civil action to another department of the court or to call in a judge of another district court, if either party file an affidavit alleging that the judge "has a bias or prejudice" against him or in favor of the opposite party. The act contains certain safeguards against abuse, but, requiring no statement of any facts of bias or prejudice, and permitting of no trial or finding as to any bias or prejudice or as to any facts in the premises, did not differ, as to material effect, from the 1931 amendment.

We have felt the foregoing recital to be necessary to indicate that the legislature in proper exercise of its regulatory powers, has indicated a number of situations in which, in place of proof of actual bias or prejudice, there is implicit in the very situation the possibility of the suspicion of bias or prejudice. The legislature has thus declared the public policy of the state, not so much for the protection of an individual litigant, as for the preservation of the respect and high regard the public has always maintained for the courts. "Courts," says Belt, J., speaking for the Oregon Supreme Court in U'Ren v. Bagley, 118 Or. 77, 245 P. 1074, 1075, 46 A.L.R. 1173, "like Caesar's wife, must be not only virtuous but above suspicion."

■ And, borrowing further from that opinion and the cases therein cited, it should be emphasized that the courts must be "free from reproach or the suspicion of unfairness." "Next in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge." And so the legislature of this state felt it important to eliminate the possibility of a reasonable apprehension that a judge might not be entirely free

from bias in enforcing the orders and decrees of the court of which he is the judge. In thus providing that "in all cases of contempt arising without the immediate view and presence of the court, the judge of such court in whose contempt the defendant is alleged to be shall not preside at such trial over the objection of the defendant," we are unable to say that any of the constitutional or inherent powers of the court may have been abridged.

■ As we have found the contempt petition sufficient under the circumstances and under the record to give the district court jurisdiction, and as we have found that the question of inability to comply by reason of the interest of the United States is a matter of defense on the part of the alleged contemners (petitioners herein), the writ of prohibition against the respondent Sixth judicial district court must be denied and the alternative writ against that respondent vacated. But as it was the mandatory duty of the respondent Honorable Merwyn H. Brown, judge of said court, not to preside at the trial of the contempt charges over the objection made under the second proviso of sec. 8943, N.C.L., the writ must issue against such respondent judge, prohibiting him from presiding at the trial of said contempt proceeding.

It is so ordered. The parties will bear their own respective costs.

HORSEY, C. J., and EATHER, J., concur.